In the Interest of R. H., D. D. H., M. L. H. and N. N. H., all minors under the age of 14 years.

Roland WEISENBURGER, Director of Social Service Board of McIntosh County, North Dakota, Petitioner and Appellee,

v.

R. H., a minor, D. D. H., a minor, M. L. H., a minor, N. N. H., a minor, Terry Welch, guardian ad litem for said minors, Respondents and Appellees,

and

R. H. and G. H., natural parents of said minors, Respondents and Appellants.

Civ. No. 9406.

Supreme Court of North Dakota.

Feb. 2, 1978.

Richard E. Herr, Wishek, for respondents and appellants.

B. E. Kretschmar, State's Atty., Ashley, for petitioner and appellee.

PEDERSON, Justice.

This is an appeal by the parents from a juvenile court order dated July 20, 1977, which found, as a fact, that each of their four children is deprived, and terminated all parental rights. After the broad review contemplated by § 27–20–56, North Dakota Century Code, we affirm the finding of deprivation but reverse and remand for further proceedings on the question of termination of parental rights.

Issues for our consideration are:

(1) Whether a previous order dated April 27, 1977, not appealed, finding that the four children are deprived, is res judicata on that question.

(2) Whether the record in this case supports, by clear and convincing evidence, the finding that the four children are deprived.

(3) If the children are deprived, whether there is clear and convincing evidence in the record of this case that the causes and conditions of the deprivation are likely to continue.

(4) Whether portions of § 27–20–02, NDCC, are unconstitutionally vague.

The record establishes that a hearing was held in the afternoon of July 11, 1977, at which time the court announced that ". . . this is the time and place set by the Court *for a continuation of the hearing on the petition for the termination of parental rights* . . . ." [Emphasis supplied.] No record of any previous hearing on a petition for termination has been supplied to this Court; however, the record on appeal includes numerous documents, some labeled as exhibits, which may have been introduced at a previous proceeding where termination of parental rights was not an issue.

From the argument presented we learn that there had been a number of hearings prior to the July 11 hearing, one of which resulted in an order, dated April 27, finding the four children to be deprived. From the only transcript submitted to us, that of the July 11 hearing, we learn that the petitioner (Director of the Social Service Board) requested that the court take judicial notice of all proceedings which had been had in "this matter prior to this time relative to the [four H children]." Objection was raised and the court reserved a ruling. Thereafter, at the conclusion of the petitioner's evidence, the motion was renewed with a specific request that the testimony of one Dr. Fleck be afforded judicial notice. The court stated that it would determine at which of the prior hearings Dr. Fleck's testimony was taken and that "if he gave his testimony on the April 15th hearing [the court would] permit his testimony to be made part of the record." There is no record of any testimony taken at an April 15 hearing.

We have said that the burden of transmitting the transcript is the primary responsibility of the appellant and that the appellant cannot shift the burden to an appellee by simply failing to transmit the transcript. *State ex rel. Olson v. Nelson,* 222 N.W.2d 383, 387 (N.D.1974). In that same case we said:

"If, however, an appellant makes a good-faith attempt to fulfill his burden [of

transmitting the transcript], the appellee should provide any additional parts of the transcript that he believes necessary." [Insertion ours.]

In this case counsel for the appellants has contended that:

(1) Judicial notice was *not* taken pursuant to either request of petitioner;

(2) The entire record is before this Court; and

(3) The record on appeal forwarded by the clerk of the district court contains documents, placed as exhibits in earlier hearings, which have no place in this appeal.

None of these contentions was disputed by the Director of the Social Service Board, who submitted the case on brief. We therefore consider the transcript now before this Court as satisfactory to the parties pursuant to Rule 10(b), North Dakota Rules of Appellate Procedure.

■ Because the testimony of Dr. Fleck was not made a part of the record on appeal, there is no way for this Court to consider it. Testimony admitted during a separate proceeding, where the termination of parental rights was not at issue, should not be judicially noticed, over objection, in a proceeding where a termination of parental rights is sought. Section 27–20–45, NDCC, requires that "the petition shall . . . state clearly that an order for termination of parental rights is requested and that the effect thereof will be [an order terminating all his rights and obligations with respect to the child and of the child to or through him arising from the parental termination]." See § 27–20–46, NDCC. Due process of law, required by the Fourteenth Amendment to the United States Constitution and Section 13 of the North Dakota Constitution, would be denied to the parents if the Social Service Board was permitted to import testimony from a hearing where the termination notice was not given.[1] We have determined that it would have been improper to take judicial notice of a prior proceeding wherein the notice requirements of § 27–20–45, NDCC, were not met. Because the case is being remanded, we need not determine whether the trial court actually did take judicial notice.

■ Section 27–20–56, NDCC, provides, in part, that an appeal from a juvenile court order "shall be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court . . . ." For the purpose of this appeal, we consider only those items which resulted from the petition to terminate parental rights. Files and records of the court which relate to H family members, but which were generated for purposes other than the termination proceeding, are not before this Court. The "files, records, and minutes or transcript of the evidence" which we do consider consist of the following:

1. Petition dated June 8, 1977, signed by the Director of the McIntosh County Welfare Board, alleging that "each of these children is without proper parental care or control, subsistence, education as required by law, or other care and control necessary for their physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the natural parents," and praying for "an Order forever terminating all parental rights."

2. Amendment to Petition dated July 6, 1977, alleging that the children had been taken from their natural parents by order of the court and placed in a foster home in Traill County, and alleging that it was observed that the children had "black and blue marks," mouth and eye swollen, and one was discovered later to have "a fracture of the left femoral shaft and oblique fracture of mid third of the left femoral shaft."

3. Transcript of the hearing held on July 11.

---

1. See *Alsager v. District Court,* 545 F.2d 1137 (8th Cir. 1976), which adopted the opinion of the District Court, 406 F.Supp. 10 (S.D.Iowa 1975). If a termination of parental rights is contemplated, the notice must satisfy procedural due process requirements. See discussion at 406 F.Supp. 24, 25.

4. Exhibits entered into evidence at that hearing, consisting only of reports concerning the fracture referred to in the Amendment to Petition.

5. Findings of Fact and Order of Disposition dated July 20.

6. Notice of Appeal from that Order.

7. Findings of Fact and Order of Disposition dated April 27.

■ Before parental rights may be terminated, three separate and distinct findings must be made: (1) that the child is a deprived child as that term is defined in § 27–20–02(5)(a), NDCC; (2) that the causes and conditions of the deprivation are likely to continue or will not be remedied; and (3) that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral or emotional harm. Section 27–20–44(1)(b), NDCC. *In re H.,* 206 N.W.2d 871 (N.D.1973). Each of these three factual findings must be supported by clear and convincing evidence. *Interest of R. W. B.,* 241 N.W.2d 546 (N.D.1976).

■ A deprived child is one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his parents, guardian, or other custodian." Section 27–20–02(5)(a), NDCC. On appeals from orders of the juvenile court we give appreciable weight to the findings of the juvenile court but we also make a broad review from "the files, records, and minutes or transcript of the evidence." Section 27–20–56, NDCC. *Interest of R. D. S.,* 259 N.W.2d 636, 637 (N.D.1977). See also, *In re R. Y.,* 189 N.W.2d 644 (N.D.1971).

### 1.

■ Is the order of April 27 res judicata on the question of deprivation of the children? Petitioner cites *Heasley v. Glinz,* 142 N.W.2d 606 (N.D.1966), in support of his position that we may not now review the question of deprivation. This position misapprehends a crucial aspect of § 27–20–30, NDCC, under which the April 27 order was made. Section 27–20–30(1)(b) authorizes the transfer of *temporary* legal custody when the child is found to be deprived. The court specifically limited jurisdiction of the order to a period of one year and required that the children remain in the home of their parents, subject to further order of the court. The temporary nature of orders of this kind is further explicitly pointed out in § 27–20–36, NDCC. The order of April 27 is not res judicata for the purpose of this case. The rules of res judicata, as stated in *Heasley v. Glinz supra,* and elsewhere, do not apply. Any other conclusion would violate the notice provisions of § 27–20–45, NDCC, and effect a denial of the parents' right to due process.

### 2.

Does the record before us contain clear and convincing evidence in support of a finding that the four children are deprived? The juvenile court's findings of fact restate, in statutory language, the definition of deprivation, that is, that each of the children is without (1) proper parental care or control, (2) subsistence, (3) education as required by law, (4) other care or control necessary for physical, mental, or emotional health, or morals, and (5) the deprivation is not due primarily to the lack of financial means of the parents.

■ Because all of the children were too young to be required to attend school at the time of the July 11 hearing, there is no education required by law. See, generally, Ch. 15–34.1, NDCC. We further find insufficient support in the evidence for that part of the finding which states that the children are without subsistence. The only evidence upon which that finding could rest are statements by a grocery clerk that, on one occasion, food which was purchased would not furnish a proper diet, and by a social worker who made an unannounced visit, stating that fried chicken was the only food which she observed being prepared for a noon meal. There was no evidence as to what the children actually ate. The parents produced evidence that the children were fed a proper diet in ample quantities.

On the other hand, we find clear and convincing evidence in the record that the children did not receive proper parental care or control; that they did not receive other care or control necessary for physical, mental, or emotional health, or morals; and that the deprivation is not due primarily to the lack of financial means of the parents. In reaching that conclusion, we wish to make clear that we do not consider that lack of cleanliness of the home, alone, can establish deprivation. We continue to adhere to the statement made by this Court in 1924:

"In this western country, . . . many a home might have been broken where large families were raised by the pioneers in one room cabins of logs or sod, had . . . begrimed faces of children, playing on naked Mother Earth, been the only showing required." *In re Kelber*, 51 N.D. 698, 200 N.W. 786, 789 (1924).

It may be correct to state that the conditions of cleanliness of the household initially led to the intervention by the juvenile court and the Social Service Board. Additional clear and convincing evidence was discovered and introduced which displayed improper care and control of these children, and the effect therefrom upon their physical, mental and emotional health. The efforts by the Social Service Board to provide services to the family went far beyond assistance to improve cleanliness.

The parents here suggest that the standard of care required in the raising of children is the "minimum standard of care the community will tolerate," citing Tamilia, *Neglect Proceedings and the Conflict Between Law and Social Work,* 9 Duquesne L.Rev. 579 (Summer, 1971); and M. Paulsen, *Justice for the Child,* "The Delinquency, Neglect & Dependency Jurisdiction of the Juvenile Court," p. 44 (Rosenheim Ed. 1962).

We said in *Interest of R. D. S.,* 259 N.W.2d 636 (N.D.1977), that the parents' efforts must "meet minimum standards of care," and we now say that those "minimum standards of care *which the community will tolerate"* is an appropriate explanation of the term "proper care." We cannot agree with contentions that this standard is any less than that of the "proper care" required by § 27–20–02(5)(a), NDCC. Both terms refer to an identical standard.

The evidence, when considered cumulatively, clearly and convincingly establishes deprivation. Lack of "proper care," as well as lack of minimum standards of care, was proven. We note, in particular, the following:

1. The two youngest children, both in diapers, suffered from rashes and infections in the genital areas. It is clear from the testimony that this considerably exceeded a diaper rash in severity, and that it resulted from parental inattention.

2. The evidence established a complete lack of discipline in the home. The children's uncontrolled behavior resulted in some danger from ordinary household chemicals, from falls, and from each other. It was clearly established that the mother was not capable of exercising the necessary control.

3. Evidence of bruises and the baby's broken leg, although inadequate to establish abuse, clearly indicate real hazards or dangers to the children while in the parents' care. One incident involved injury of one child by another, in the presence of both parents, with no effort being made to intervene.

4. The problems of the oldest child, having been diagnosed as involving childhood schizophrenia, were attributed in part to environmental factors. The evidence indicates that this child had not received adequate training in the basic skills of self care.

5. The homemaker, whose duty it was to assist and teach the parents in the areas where they lacked the necessary ability to perform parental duties, reported parental inability to properly pick up a child and to bathe a child and failure to adequately interact with the children.

We find that deprivation was established by clear and convincing evidence. The de-

gree of deprivation varied among the children. The fact that all did not display the same symptoms of ailments and maladjustment does not preclude a finding of deprivation as to all. All were being raised in essentially the same environment. See *Waagen v. R. J. B.,* 248 N.W.2d 815 (N.D. 1976); *In re H.,* 206 N.W.2d 871 (N.D.1973).

We deem it necessary to comment on an argument presented in behalf of the parents that, where mental illness is indicated, it would be more appropriate that a mental health commitment to the state hospital be sought pursuant to Ch. 25–03.1, NDCC. We are urged to require that this step be exhausted as a prerequisite to a proceeding to terminate parental rights. Such a general rule would interfere with the duty of juvenile authorities to take such action as may be required in the light of the facts and circumstances in each individual case. We do not here decide that either mental health proceedings or juvenile proceedings are preferred in any particular case. A suggestion such as this should be made in behalf of the parents at an earlier stage in the juvenile proceedings if it is to be meaningful. Only then can it be evaluated along with other factors in the case.

### 3.

Is the evidence clear and convincing that the causes and conditions of the deprivation are likely to continue? We think that it is not. We have referred to the problems which we encountered in examining the documents transmitted to this Court for this appeal, and we have identified those documents which comprise the record. It is quite obvious that evidence relating to the likelihood of the continuance of deprivation was not introduced at the hearing of July 11 (which is, quite properly, the only hearing for which we have a transcript) because the petitioner relied upon his motion requesting judicial notice to supply that evidence. Essential differences exist between termination proceedings and juvenile court proceedings where a termination of parental rights is not sought. See §§ 27–20–36 and 27–20–46, NDCC. We

have determined that the requested judicial notice should not have been taken. See Rule 201, North Dakota Rules of Evidence. The record before us clearly fails to establish that the causes and conditions of the deprivation are likely to continue. Termination of parental rights is not, therefore, sustainable under § 27–20–44(1)(b), NDCC.

### 4.

Is § 27–20–02, NDCC, unconstitutionally vague? It is contended that the portion of § 27–20–02(5)(a), NDCC, which defines as deprived a child who is "without . . . other care or control necessary for his physical, mental, or emotional health, or morals," is so vague as to be unconstitutional. Because we have found that there is sufficient evidence of deprivation based on a lack of "proper parental care," and because we have previously sustained that phrase as affording a "commonly understood and well known standard to which their conduct and responsibility must conform," [*In re J. Z.,* 190 N.W.2d 27, 36 (N.D.1971), citing *Mitchell v. Davis,* 205 S.W.2d 812, 12 A.L.R.2d 1042 (Tex.Civ.App. 1947)] and because no "other care" was involved in this case, we find it unnecessary to decide the constitutionality of the challenged phrase.

### 5.

Because we deem it necessary to remand this case for further consideration, we find it appropriate to comment on other matters and contentions raised. The parents cite a number of cases where social service agencies have tried, over substantial periods of time, to help parents provide an adequate environment for their children and then, only after many failures, have sought the termination of parental rights or of parental custody. Specifically mentioned were *Interest of R. D. S.,* 259 N.W.2d 636 (N.D.1977), where efforts were made for at least five years; *In Interest of R. L. D.,* 253 N.W.2d 870 (N.D.1977), eighteen months; *Bjerke v. D. T.,* 248 N.W.2d 808 (N.D.1976), eight months; *In re J. V.,* 185 N.W.2d 487 (N.D.1971), thirty months; and *Welfare of*

*Wachlin*, 245 N.W.2d 183 (Minn.1976), at least one year. We are urged to propound a rule establishing a prerequisite of time and effort prior to attempts to obtain parental termination. No arbitrary rule is required or would be appropriate. Circumstances and conditions may require a termination without delay. The case of *Waagen v. R. J. B.*, 248 N.W.2d 815 (N.D.1976), presented just such circumstances and we do not doubt that similarly compelling circumstances will arise again.

 Finally, we think it appropriate to comment on the practice of appointing a social service employee as guardian ad litem. We believe it to be ill-advised. The practice is prohibited by statute when the social service agency is the petitioner in the matter. Section 27–20–48, NDCC, includes the following:

"A party to a proceeding or his employee or representative shall not be appointed."

The order of the juvenile court terminating the parental rights to the four H children under § 27–20–44, NDCC, is reversed and, because we agree with the finding that the children are deprived, we remand to the juvenile court for disposition in accordance with § 27–20–30, NDCC, which authorizes continued supervision or the transfer of temporary custody. If there is clear and convincing proof available that the causes and conditions of the deprivation are likely to continue, we presume that the petitioner will seek a further hearing to present such evidence under circumstances which will protect the due process rights of the children and the parents.

ERICKSTAD, C. J., and PAULSON, VOGEL and SAND, JJ., concur.