**In the Interest of David KUPPERION.**

**F. DAYAP, M.D., Petitioner and Appellee,**

v.

**David KUPPERION, Respondent and Appellant.**

**Civ. No. 10391.**

Supreme Court of North Dakota.

March 3, 1983.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for respondent and appellant; argued by William A. Mackenzie, Jamestown.

Wendy P. Schulz, Asst. State's Atty., Jamestown, for petitioner and appellee.

PAULSON, Justice.

David Kupperion appeals from an "Order for Hospitalization and Treatment Following Treatment Hearing" entered on January 12, 1983, by the Stutsman County Court. We affirm.

The evidence reveals that on October 7, 1982, Kupperion was admitted to the North Dakota State Hospital under the emergency commitment procedures outlined in § 25-03.1-25 of the North Dakota Century Code. This action was precipitated by a telephone call Kupperion made to law enforcement

authorities in Cass County informing them that he was contemplating suicide. Kupperion was taken to St. Luke's Hospital in Fargo where he was examined by a physician. The physician discovered a scratch on Kupperion's wrist. Kupperion later admitted that the scratch was self-inflicted with a knife. The scratch, however, was superficial and did not require treatment. Kupperion was then taken to the State Hospital.

On October 8, 1982, Kupperion signed voluntary commitment papers. Kupperion remained under treatment at the State Hospital, but on January 6, 1983, he executed a written request for release. Dr. F. Dayap of the State Hospital subsequently proceeded to file in Stutsman County Court a petition for involuntary commitment on January 7, 1983. An involuntary commitment hearing was held in the Stutsman County Court on January 12, 1983. Dr. Dayap was the only person who testified during the hearing, at which Kupperion was represented by counsel.

At the close of the testimony, the court concluded that Kupperion was a mentally ill person requiring treatment and the court ordered that he be committed to the State Hospital for a period of not to exceed 90 days. Kupperion appeals from this order.

Kupperion raises the following issues on appeal: (1) whether or not Kupperion is entitled to immediate discharge from the State Hospital because of noncompliance with § 25–03.1–29, N.D.C.C., which provides that a hearing on appeal shall be commenced within 14 days of filing of the notice of appeal; and (2) whether or not the court's finding that Kupperion is a mentally ill person in need of treatment is supported by clear and convincing evidence.

I

This appeal is the first of its kind for our Court. Prior to January 1, 1983, expedited appeals from orders of involuntary commitment were statutorily allowed under Chapter 25–03.1, N.D.C.C., to the district courts rather than to the Supreme Court. *See* § 25–03.1–29, N.D.C.C.; § 113, Ch. 320,

1981 S.L. Section 25–03.1–29, N.D.C.C., currently provides:

"*25–03.1–29. Appeal.* The respondent shall have the right to an expedited appeal from an order of involuntary commitment or alternative treatment, a continuing treatment order, an order denying a petition for discharge, or an order of transfer. Upon entry of an appealable order, the court shall notify the respondent of the right of appeal and the right to counsel. The notice of appeal must be filed within thirty days after the order has been entered. *Such appeal shall be to the supreme court and the hearing shall be commenced within fourteen days of filing of the notice of appeal.* The hearing shall be limited to a review of the procedures, findings, and conclusions of the lower court.

"Pending appeal, the order appealed from shall remain in effect, unless the supreme court determines otherwise. The respondent shall not be denied the opportunity to be present at the appeal hearing, and the court conducting the appeal may issue such interim order as will assure this opportunity to the respondent while protecting the interest sought to be served by the order appealed from." [Emphasis added.]

In the present case, Kupperion filed his notice of appeal with the clerk of the Stutsman County Court on February 4, 1983. The notice of appeal was received by the clerk of the Supreme Court on February 8, 1983, and was subsequently filed in the office of the clerk of the Supreme Court on February 9, 1983. Oral arguments on this case took place before this Court on February 23, 1983. Kupperion contends that because oral arguments were heard more than 14 days after he filed his notice of appeal with the clerk of county court, he should be entitled to immediate discharge from the State Hospital. We do not agree.

Section 25–03.1–29, N.D.C.C., is silent in regard to whether or not the 14-day period in which a hearing shall be commenced begins to run when the notice of

appeal is initially filed in the county court or when it is subsequently forwarded and filed in the Supreme Court. We conclude that the 14-day period under § 25–03.1–29, N.D.C.C., begins to run only after the notice of appeal has been filed in our Court which will hear the appeal.

After being notified of an expedited appeal such as the one involved in the instant case, this Court must be afforded a sufficient amount of time to effectively process that appeal. Only upon *our* receipt of the notice of that appeal can the proper procedural steps be taken to ensure a just determination of the issues in compliance with the 14-day hearing requirement. A sufficient amount of time is required not only for the clerk of the Supreme Court to schedule oral arguments for the case and to adequately notify counsel of the briefing schedules; but, also, to help foster just adjudication of the merits of such appeal through more adequate preparation by counsel as well as this Court. An adoption of Kupperion's interpretation of the statute, which would hold this Court to a time limit that could run either partially or entirely before the Court even had notice of the commencement of the appeal, would not only be detrimental to the proper and efficient functioning of this Court, but would also be detrimental to the interests of the parties involved.

■ We also believe that although it is the function of the clerk of county court to transmit the notice of appeal to this Court, the ultimate responsibility for assuring that the notice of appeal is timely transmitted to the Supreme Court lies with the counsel for an appellant. *Cf. J.L.R. v. R.L.G.,* 311 N.W.2d 191, 193 (N.D.1981); *In Interest of R.H.,* 262 N.W.2d 719, 721 (N.D.1978); *State ex rel. Olson v. Nelson,* 222 N.W.2d 383, 387 (N.D.1974); *Naaden v. Hagen,* 213 N.W.2d 702, 704 (N.D.1973). This allocation of responsibility will assist in guarding against undue delay between the time the notice of appeal is filed in the county court and the time the notice of appeal is received and filed in this Court.

■ Another consideration in the determination of this issue is that legislation will be construed, if possible, so that it will pass constitutional muster. *State v. Kottenbroch,* 319 N.W.2d 465, 473 (N.D.1982); *Paluck v. Bd. of Cty. Com'rs, Stark Cty.,* 307 N.W.2d 852, 856 (N.D.1981); *Snortland v. Crawford,* 306 N.W.2d 614, 626 (N.D.1981); *Grace Lutheran Church v. N.D. Employment,* 294 N.W.2d 767, 772 (N.D.1980). In *City of Carrington v. Foster County,* 166 N.W.2d 377, 382 (N.D.1969), this Court recognized that the creation by our Constitution of the three branches of government operates as an apportionment of the different classes of power and that because all of the branches derive their authority from the same Constitution there is an implied exclusion of each branch from the exercise of the functions of the other. *See also Paluck v. Bd. of Cty. Com'rs, Stark Cty., supra* 307 N.W.2d at 856. If we were to construe § 25–03.1–29, N.D.C.C., in such a fashion that would unduly impede or hamper this Court in the discharge of its judicial functions, a serious question concerning the doctrine of separation of powers would arise. *See United States v. Brainer,* 515 F.Supp. 627, 631–640 (D.Md.1981); *United States v. Howard,* 440 F.Supp. 1106, 1109–1113 (D.Md.1977); *State ex rel. Emerald People's Util. v. Joseph,* 292 Or. 357, 640 P.2d 1011, 1013–1014 (1982); *State v. Johnson,* 224 Ind. 540, 69 N.E.2d 592, 594–596 (1946).

We therefore conclude that because the hearing in the instant case was held within fourteen days from the date in which Kupperion's notice of appeal was filed in this Court, the provisions of § 25–03.1–29, N.D.C.C., were not violated.[1]

II

Kupperion also contends that the evidence does not clearly and convincingly establish his need for commitment. He does

---

1. Because of our disposition of this issue, we need not determine whether or not immediate discharge from the State Hospital is the proper remedy for failure to hold the hearing on appeal within the 14-day time limitation set forth in § 25–03.1–29, N.D.C.C.

not contest the Court's finding that he was a "mentally ill person" as defined by statute. *See* § 25–03.1–02(10), N.D.C.C. Nor does he contend that he is not receiving treatment in the State Hospital. *See Youngberg v. Romeo,* —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Rather, he argues that the court's finding that he is a "person requiring treatment" is not supported by clear and convincing evidence.

In involuntary commitment proceedings, the evidence must establish that the individual involved is a person requiring treatment. § 25–03.1–07, N.D.C.C. The burden of proof in these proceedings lies with the petitioner, and there is a presumption in favor of the respondent that he or she does not require such treatment. § 25–03.1–19, N.D.C.C. Furthermore, in order for an involuntary commitment petition to be granted, it must be sustained by evidence which is clear and convincing. § 25–03.1–19, N.D.C.C.; *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

A "person requiring treatment" is defined in § 25–03.1–02(11), N.D.C.C., as follows:

"11. 'Person requiring treatment' means either a person:

    a. Who is severely mentally ill; or

    b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others or property.

'Serious risk of harm' means a substantial likelihood of:

(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential; or

(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

Before reaching the precise issue set forth by Kupperion, it is necessary to decide the standard of review this Court should use when considering whether or not a trial court has erred in determining that an individual involved in an involuntary commitment proceeding is a person requiring treatment.

■ Although an involuntary commitment hearing is to be conducted in "as informal a manner as practical", the Legislature has determined that the issue shall be tried as a civil matter. § 25–03.1–19, N.D.C.C. Accordingly, our Court has been limited to reviewing "the procedures, findings, and conclusions of the lower court". § 25–03.1–29, N.D.C.C. The scope of review of the findings of fact of a trial court on an appeal to this Court from a case tried without a jury is limited by Rule 52(a) of the North Dakota Rules of Civil Procedure. *Ferguson v. Ferguson,* 202 N.W.2d 760, 763 (N.D.1972). Under Rule 52(a), a trial court's findings of fact will not be set aside unless they are clearly erroneous. N.D.R. Civ.P. 52(a). In *Hoge v. Burleigh Cty. Water Management Dist.,* 311 N.W.2d 23, 28 (N.D.1981), our Court stated:

" . . . in reviewing those findings, the evidence must be viewed in a light most favorable to the findings. *Eakman v. Robb,* 237 N.W.2d 423, 429 (N.D.1975). On appeal it is not the function of this court to substitute its judgment for that of the trial court. *Rolfstad v. Hanson,* 221 N.W.2d 734, 737 (N.D.1974). We must give due regard to the opportunity of the trial court to judge the credibility of witnesses, and, unless clearly erroneous, the findings of fact of the trial court, sitting without a jury, are binding upon appeal. *Tower City Grain Co. v. Richman,* 232 N.W.2d 61, 65 (N.D.1975). Questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this court. *Bladow v. Bladow,* 249 N.W.2d 917, 920 (N.D.1977). The mere fact that we might have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court.

*In Re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

Conclusions of law, on the other hand, are not fortified by the clearly erroneous rule applicable to findings of fact, and are thus fully reviewable on appeal. *E.E.E., Inc. v. Hanson,* 318 N.W.2d 101, 104 n. 3 (N.D. 1982). We must also keep in mind that whether a particular determination is a finding of fact or a conclusion of law is to be determined by the reviewing court and labels placed upon findings or conclusions by the trial court are not conclusive. *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897, 908 (N.D.1982); *E.E.E., Inc. v. Hanson, supra; Ferguson v. Ferguson,* 202 N.W.2d 760, 763 (N.D.1972). In *E.E.E., Inc. v. Hanson, supra* 318 N.W.2d at 104, our Court distinguished between findings of fact and conclusions of law as follows:

> "Findings of fact are the realities as disclosed by the evidence as distinguished from their legal effect or consequences. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a 'conclusion of law.' *Slope Cty., Etc. v. Consolidation Coal Co.,* 277 N.W.2d 124, 127 (N.D.1979).

■ We therefore proceed to determine whether or not the trial court's written Finding of Fact II, which is the finding at issue in the instant case, is actually a finding of fact or a conclusion of law. That finding, which essentially tracks the statutory language of § 25–03.1–02(11)(b)(2), N.D.C.C., states in substance that Kupper-

ion is a person who requires treatment because of mental illness and because he poses a serious risk of harm to the respondent and others and a substantial likelihood of killing or inflicting serious bodily harm to another person, as manifested by acts or threats. We also note that during the hearing, the trial court made an oral finding that Kupperion "is a person requiring treatment and that there is substantial likelihood that he will do harm to himself or others . . . as manifested by acts in the past".

Applying the analytical framework set forth in *E.E.E., Inc. v. Hanson, supra,* we conclude that a determination that a person is in need of treatment under the guidelines set forth in § 25–03.1–02(11), N.D.C.C., is a finding of fact rather than a conclusion of law. A determination that a person is in need of treatment of the type involved in these cases is not an "ultimate conclusion [which] can be arrived at only by applying rules of law"; but, rather, arises from "the realities as disclosed by the evidence". *E.E.E., Inc. v. Hanson, supra.* As such, the "clearly erroneous" rule applies on appeal from these findings.[2]

This approach is not inconsistent with our treatment of a trial court's determinations in domestic relations cases. *See, e.g., Freitag v. Freitag,* 318 N.W.2d 760, 761 (N.D. 1982); *Voth v. Voth,* 305 N.W.2d 656, 658 (N.D.1981); *Keator v. Keator,* 276 N.W.2d 135, 138 (N.D.1979); *Larson v. Larson,* 234 N.W.2d 861, 864 (N.D.1975); *Matson v. Matson,* 226 N.W.2d 659, 663 (N.D.1975);

---

2. The application of the "clearly erroneous" rule in this case is to be distinguished from our de novo review of the record in *In Interest of Klein,* 325 N.W.2d 227 (N.D.1982). In *Klein,* the appellant, who had been involuntarily committed on the basis that she was severely mentally ill, *see* § 25–03.1–02(11)(a), N.D.C.C., appealed from a denial of her application for a writ of habeas corpus. Although we dismissed her appeal because the proper method of securing a writ of habeas corpus from this Court would have been to file an original application with our Court, we nevertheless concluded that we would have denied her application on the merits. We stated in *In Interest of Klein, supra* 325 N.W.2d at 230:

> "A de novo review of the record is proper in this instance because Bonita's counsel

alleges that she was restrained in violation of her constitutional rights. *Application of Stone,* 171 N.W.2d 119, 121 (N.D.1969); *Fournier v. Roed,* 161 N.W.2d 458, 460 (N.D. 1968). In reviewing this case, we have not applied the clearly erroneous test of Rule 52(a), N.D.R.Civ.P., because we have considered it, for purposes of discussion, as though original jurisdiction had been sought and the case were tried anew. This distinguishes this case from *Mansukhani v. Pailing,* 318 N.W.2d 748, 751 (N.D.1982) and *Mansukhani v. Pailing,* 300 N.W.2d 847 (N.D. 1980), *cert. denied,* 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981)."

Kupperion's appeal is based on the statutory authority found in § 25–03.1–29, N.D.C.C. He has not sought our original jurisdiction.

*Ferguson v. Ferguson,* 202 N.W.2d 760, 763 (N.D.1972). In *Ferguson, supra,* we determined that findings in a divorce action that a party has committed adultery, that the best interests of the children would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property is equitable, are appropriately dealt with on appeal as findings of fact for the purposes of Rule 52(a), N.D.R.Civ.P. The underlying premise for treating these determinations as findings of fact rather than as conclusions of law is that this Court is not in an appropriate position, because of the trial court's special opportunity to judge the credibility of the witnesses, to reevaluate the underlying facts which necessarily lead to a result, which is in all respects another factual determination. Similarly, in an involuntary commitment proceeding, our Court is not in an appropriate position to reevaluate the underlying facts and determine as a matter of law whether or not a person is in need of treatment when the very question of whether or not an "individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the *meaning* [emphasis in original] of the facts *which must be interpreted by expert psychiatrists and psychologists* [emphasis added]". *Addington v. Texas,* 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323, 333 (1979).

█ We do not find, on the basis of the record before us, that the county court's Finding of Fact II is clearly erroneous within the purview of Rule 52(a), N.D.R.Civ.P.

The evidence reflects that Kupperion was initially admitted to treatment because he had threatened to commit suicide. Doctors discovered a superficial wound on his wrist, which Kupperion admitted was self-inflicted. The uncontradicted testimony of Dr. Dayap, who was the only person who testified at the hearing, established that Kupperion's October 7, 1982, admission to the State Hospital was the sixth time he had been admitted there since 1977, and the second time in 1982. The doctor testified that he had examined Kupperion the week before the hearing and said that Kupperion

continued to suffer from a mental affliction which is presently referred to medically as "bipolar disorder", and previously known as "manic-depressive". This is the same condition he had been admitted and treated for on the previous occasions.

Dr. Dayap further testified that "bipolar disorder" is characterized by drastic mood swings, ranging from deep depression to extreme elation. Kupperion's condition is also accompanied by various psychotic symptoms. The doctor's testimony established that Kupperion's mood swings and their effect on his behavior had not been sufficiently stabilized at the time of his most recent examination. Dr. Dayap also testified that Kupperion's condition was similar to what it had been at the time of his current admission.

Although Kupperion did not attempt suicide during his treatment at the hospital, he did exhibit violent behavior toward hospital staff members on several occasions. Kupperion threw chairs on one occasion and engaged in a physical altercation with a staff member on another occasion. Kupperion's violent actions and mental deterioration resulted in his being temporarily withdrawn from off-ward therapy activities. Considering Kupperion's mental condition and erratic behavior, Dr. Dayap believed alternative treatment at the Southeast Human Service Center facilities would be inappropriate. The doctor also agreed that, based upon these specific facts and circumstances, there is a reasonable expectation that if Kupperion were not hospitalized at this time, he would pose a risk of harm to himself or others.

We believe that the county court's finding that Kupperion is a person in need of treatment is not clearly erroneous and, in light of the uncontroverted testimony of Dr. Dayap establishing that Kupperion is in need of treatment, that the county court could properly find that the petition is sustained by clear and convincing evidence.

For the reasons stated in this opinion, the order of the county court is affirmed.

ERICKSTAD, C.J., and PEDERSON, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the result. I am, however, troubled by the application of Rule 52(a), N.D.R.Civ.P., to this appeal. There is no dispute of fact. If there were I would agree Rule 52(a) would have limited application to the county court's findings of fact. The issue exists as to whether or not, under these facts, Kupperion is in need of treatment as defined by Section 25–03.1–02(11), N.D.C.C. I do not believe that the determination that a person is in need of treatment as statutorily defined is a finding of fact. Section 25–03.1–19, N.D.C.C., requires that the county court determine that the petition is sustained by clear and convincing evidence if the respondent is to be involuntarily committed to a treatment center. Because there is no dispute as to the facts involved in this case I believe our function is to determine whether or not the county court's decision that Kupperion is in need of treatment is supported by clear and convincing evidence, i.e.: Do the undisputed facts clearly and convincingly indicate that Kupperion is in need of treatment? I believe that they do and I would therefore affirm the decision of the county court.

SAND, J., concurs.

SAND, Justice, concurring specially and dissenting.

I agree with the special concurrence of Justice VandeWalle, but I am compelled to make a further statement and observation.

North Dakota Century Code § 25–03.1–19, in part states:

"If, upon completion of the hearing, the court finds that the petition has not been sustained by clear and convincing evidence, it shall deny the petition, terminate the proceeding, and order that the respondent be discharged if he has been hospitalized prior to the hearing."

In addition, the United States Supreme Court in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 823 (1978), enunciated the rule of law that due process requires that the standard of proof in committing an individual involuntarily must be greater than the preponderance of evidence but need not be "beyond a reasonable doubt" standard, and that the standard of clear and convincing evidence applies. The Court did not even mention the clearly erroneous rule as a contender. Thus by the dictates of the United States Supreme Court, *supra,* and the statutory provision, the applicable standard for an involuntary commitment is clear and convincing evidence.

The various standards of evidence from the lowest to the highest are: (1) clearly erroneous Rule 52(a), North Dakota Rules of Civil Procedure (supported by evidence), (2) substantial evidence, (3) preponderance of evidence (greater weight of evidence); (4) clear and convincing, and (5) beyond a reasonable doubt. A careful examination of these standards should leave no doubt that the clearly erroneous standard and the clear and convincing standard have very little, if anything, in common, and that Rule 52(a), NDRCivP, as it is normally used, has no application in the instant case. We have said that the clearly erroneous Rule 52(a), NDRCivP, has no application in reviewing decisions of an administrative agency which were governed by the substantial evidence rule and now by the preponderance of evidence rule, Ch. 28–32, North Dakota Century Code. *O'Brien v. North Dakota Workmen's Compensation Bureau,* 222 N.W.2d 379 (N.D.1974). For this reason and because the findings of fact in divorce cases need not be supported by clear and convincing evidence, whereas an involuntary commitment does, I see no valid legal reason to discuss Rule 52(a) or how it has been applied in divorce (domestic) cases. I have no problem in applying Rule 52(a) to *findings of fact* in divorce cases, nor do I have a problem recognizing that findings of fact in many instances are necessary to make a determination unless the facts are not in dispute, but I cannot agree that all determinations in divorce or domestic cases are a finding of fact.

Merely because this Court may have loosely labeled or treated certain determinations in domestic cases as findings of fact does not support the legal conclusion that a determination-conclusion of law becomes a valid finding of fact simply because it is labeled or treated as such. A finding of fact and a conclusion of law will remain what they legally are regardless of how they may be labeled or treated by an appellate court. I agree with Justice Vande-Walle that the conclusion of law labeled a finding of fact by Justice Paulson does not make it a finding of fact. As someone said, a rose by any other name is still a rose. Even if it were a finding of fact, Rule 52(a) would not apply.

If the facts in this case were in dispute I could agree that Rule 52(a) would have limited application, but only as to credibility for determining which facts the trial court relied upon in making its determination. Even then we would still be required to determine if the commitment is supported by clear and convincing evidence. This is somewhat comparable to the review of a bench trial conviction. The reviewing court involving a conviction is concerned primarily whether or not there is sufficient evidence upon which the court could have found beyond a reasonable doubt that the defendant was guilty. Similarly, our legal function on review in this instance is to determine if the commitment is supported by clear and convincing evidence. I believe it is and, therefore, I concur, but only in the result.