James P. IGLEHART, Petitioner
and Appellee,

v.

Margaret D. IGLEHART, Respondent
and Appellant.

Civ. No. 10675.

Supreme Court of North Dakota.

May 8, 1984.

Merle Torkelson, State's Atty., Washburn, for petitioner and appellee.

Carl Martin, Tuntland Law Office, Garrison, for respondent and appellant.

SAND, Justice.

Margaret Iglehart appealed from an order of the McLean County Court requiring her to be hospitalized and treated at the North Dakota State Hospital.

James Iglehart, Margaret's husband, filed a petition in McLean County Court on 31 January 1984 for Margaret's involuntary commitment to the State Hospital. The court signed an emergency treatment order on 22 February 1984 directing that Margaret be detained at the State Hospital pending a preliminary hearing. Dr. Mongkol Srisopark, a psychiatrist at the State Hospital, examined Margaret on 23 February.

Following a preliminary hearing on 27 February the court found probable cause to believe that Margaret was in need of treatment and ordered her to be returned to the State Hospital until 7 March. Dr. Srisopark again examined Margaret on 29 February and concluded that Margaret is severely mentally ill. The court subsequently held a treatment hearing on 9 March, in which it concluded that Margaret was in need of hospitalization. The court ordered that Margaret be treated at the State Hospital for a period not to exceed ninety days. Margaret appealed from that order.

Margaret raised essentially one issue,[1] whether or not the trial court's finding that she is in need of treatment is supported by clear and convincing evidence. Counsel for Margaret acknowledged during oral argument to this Court

---

1. Margaret also "urge[d] this court to examine whether the phrase 'severely mentally ill'" in NDCC § 25–03.1–02(11)(a), is void for vagueness as applied to the present case. However, Margaret did not support her contention with any authority in her brief or her argument to this court. We therefore deem her contention unworthy of consideration.

that the record contains no medical evidence to dispute Dr. Srisopark's conclusion that Margaret is severely mentally ill and poses a serious risk of harm to herself, others, or property.

 In involuntary commitment proceedings the burden of proof is upon the petitioner to demonstrate that the respondent is a person requiring treatment. NDCC § 25–03.1–19. A presumption exists in favor of the respondent that he or she does not require treatment. *Ibid.* To be valid, a commitment order must be supported by clear and convincing evidence. *Id.; In the Interest of Kupperion,* 331 N.W.2d 22, 26 (N.D.1983); *Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323, 335 (1979).

A "person requiring treatment" is defined in NDCC § 25–03.1–02(11) as a person:

"a. Who is suffering from severe mental illness, severe alcoholism, or severe drug addiction. 'Severe' means that the disease or addiction is associated with gross impairment of the person's level of adaptive functioning as outlined by axis V of the diagnostic and statistical manual of mental disorders of the American psychiatric association; or

"b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property. 'Serious risk of harm' means a substantial likelihood of:

(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential.

(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

Margaret is forty years old and the mother of nine children ages 3½ to 19. She and her husband operate a 4,000-acre dairy farm in McLean County. Margaret has previously received psychiatric treatment on a voluntary and involuntary basis. She was hospitalized at St. Joseph's Hospital in Minot and St. Alexius Medical Center in Bismarck. Prior to the present action she was a patient at the North Dakota State Hospital from late June 1983 until early Fall 1983. Margaret voluntarily committed herself on that occasion following an involuntary commitment petition filed by her husband.

Five witnesses testified at the 9 March commitment hearing. Among them were her husband, James; Dr. Srisopark; a social worker at the North Dakota State Hospital; a social worker in McLean County; and a McLean County deputy sheriff. Respondent Margaret testified on her behalf.

Dr. Srisopark testified that, based upon Margaret's social history, previous hospitalization at the State Hospital, his examination and the report from his staff, he had diagnosed Margaret as a schizophrenia paranoid type. Dr. Srisopark explained that a person suffering from such a disorder has emotional disturbances and delusions manifested by a feeling of paranoia and suspiciousness, impaired judgment, and hostility. Dr. Srisopark testified that Margaret's paranoia was evidenced by her claim that she was in the infantry in World War II and that a soldier had shot at her and missed. Dr. Srisopark testified that Margaret therefore believes that someone is still trying to harm her.

Dr. Srisopark testified that he considered, but rejected, outpatient treatment. He recommended that Margaret continue to take medication that had been prescribed earlier. Her husband testified that her condition improved when she took the medication but that she frequently refused to take it because she complained of side effects such as dizziness and shakiness. Dr. Srisopark testified that without the medication Margaret's condition was unlikely to improve and that other medication could be prescribed to reduce the side effects.

**394**

The record contains considerable evidence to support Dr. Srisopark's conclusion that Margaret is suspicious of and hostile toward others. Asked on cross-examination if she was concerned about being hurt in any way, Margaret replied, "Yes, I'm concerned for my life ...." Asked who she felt is a threat to her she replied, "Well, Jim is for one thing."

James testified that Margaret burned some of his music tapes, their wedding pictures, and that she attempted to burn wood that he had bought to build a fence by pouring gasoline over it. Margaret denied that she had acted out of anger and testified that she disposed of the wedding pictures because "[she had] paid for them." She stated that she attempted to burn the fence wood because she wanted to "use the wood for a barbecue and make it like a barbecue."

Dr. Srisopark testified that he believed Margaret was most angry with her father. James alleged in his commitment petition that when Margaret was visiting her father in Florida in late 1983 she had swung at him with a golf club. Dr. Srisopark testified that Margaret told him that she swung the club at her father because he had entered her room late at night.

James also testified that he was concerned about Margaret's attraction to knives. He stated that on one occasion he found several butcher knives wrapped in a bath towel and stored in a closet. Margaret claimed that she did not know how or why the knives had been placed in the closet, but she speculated that James planned to give the knives to her for Christmas. James testified that on another occasion he found three butcher knives wrapped in naugahyde lying on a table the morning that Margaret left for Florida to visit her father. Margaret stated that she planned to store the knives while she was gone so that they wouldn't get lost because she had already lost several knives and "because some people don't appreciate knives." Margaret acknowledged that she "always carried knives," usually a "camping knife."

Finally, several witnesses testified that Margaret had frequently told them that she would die young. She also believes that she has multiple sclerosis, bronchitis, and a blood condition that makes her a "bleeder." The record contains no evidence to support her claims.

 The foregoing testimony and reports provide clear and convincing evidence supporting the trial court's conclusion that Margaret is severely mentally ill; that she may pose a serious risk of harm to herself, others, or property; and that she is in need of treatment.

The order of the county court is affirmed.

ERICKSTAD, C.J., and GIERKE, PEDERSON and VANDE WALLE, JJ., concur.