In the Interest of Debra DAUGHERTY.

Michael SCHMIDT, Petitioner
and Appellee,

v.

Debra DAUGHERTY, Respondent
and Appellant.

Civ. No. 10416.

Supreme Court of North Dakota.

March 30, 1983.

Ottmar & Ottmar, Jamestown, for respondent and appellant; argued by Joanne H. Ottmar, Jamestown.

Richard C. Wilkes, Asst. State's Atty., Minot, for petitioner and appellee.

PAULSON, Justice.

Debra Daugherty [Debra] appeals from an order of the Stutsman County Court dated February 9, 1983, requiring that she be hospitalized and treated at the North Dakota State Hospital for a period of not to exceed ninety days. We affirm.

Prior to her present commitment, Debra was attending therapy sessions at the North Central Human Service Center in Minot. The evidence reflects that during the course of her treatment there, she exhibited extensive signs of suicidal behavior. On one occasion she threatened to jump out of a window to end her life. She also made numerous threats and attempts to end her life by taking overdoses of aspirin. On New Year's Eve, December 31, 1982, Debra was observed walking in and out of the traffic on the Burdick Expressway in Minot, where she stopped at least one motorist and asked him to run over her.

During this period of time other aspects of Debra's behavior caused considerable concern to the staff of the Center who supervised her treatment there. On several occasions she would lie down in a snowbank or on ice in the parking lot at the Human Service Center, in an attempt to convince people that she had fallen. She also visited a hospital emergency room on several occasions, trying to get medical treatment when she was not in need of medical treatment. She had also become "quite disruptive" during outpatient treatment activities held at the Human Service Center.

As a result of her conduct, Debra was committed to the North Dakota State Hospital on a preliminary basis by the Ward County Court on January 4, 1983. She signed voluntary commitment papers on the following day. Debra remained under treatment at the State Hospital, but, on February 1, 1983, she executed a written request for release. Michael Schmidt, a licensed clinical psychologist at the State Hospital, proceeded to file in Stutsman County Court a petition for her involuntary commitment on February 2, 1983. Debra, Schmidt, and Jack Mattson, partial care supervisor and Debra's case manager at the North Central Human Service Center in Minot, testified at such hearing.

At the close of the testimony, the county court found that Debra was mentally ill and was a person requiring treatment, and ordered that she be hospitalized at the State Hospital for treatment for a period of not more than ninety days. On March 11, 1983, within the 30-day time limit required by § 25–03.1–29 of the North Dakota Century Code, Debra decided to exercise her right to appeal from the county court's order and the notice of appeal was filed accordingly.

Debra basically raises two issues in the instant case: (1) whether or not the trial court erred in finding that she is a person in need of treatment; and (2) assuming she is a person in need of treatment, whether or not the trial court erred in ordering that she be committed to the State Hospital rather than ordering that she submit to less restrictive alternative treatment.

I

In *Dayap v. Kupperion,* 331 N.W.2d 22, 26 (N.D.1983), our court recently stated:

"In involuntary commitment proceedings, the evidence must establish that the individual involved is a person requiring treatment. § 25–03.1–07, N.D.C.C. The burden of proof in these proceedings lies with the petitioner, and there is a presumption in favor of the respondent that he or she does not require such treat-

ment. § 25–03.1–19, N.D.C.C. Furthermore, in order for an involuntary commitment petition to be granted, it must be sustained by evidence which is clear and convincing. § 25–03.1–19, N.D.C.C.; *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)."

Section 25–03.1–02(11), N.D.C.C., defines a "person requiring treatment" as follows:
"11. 'Person requiring treatment' means either a person:

"a. Who is severely mentally ill; or

"b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others or property. 'Serious risk of harm' means a substantial likelihood of

"(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential; or

"(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

"(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

■ A trial court's determination of whether or not there is clear and convincing evidence that a respondent is a person in need of treatment is a finding of fact which this court will not disturb on appeal unless it is clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure. *Miller v. Rambousek,* 331 N.W.2d 548 (N.D.1983); *Dayap v. Kupperion,* 331 N.W. 2d 22 (N.D.1983).

■ The trial court found in a preprinted form, whereby checkmarks were placed beside applicable statements, that Debra is mentally ill and there is a substantial likelihood of "suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential". No written findings were entered which show the underlying basis upon which the trial court determined that Debra is a person in need of treatment. We have recently expressed our disapproval of preprinted forms similar to the type used in the present case because their use "places severe restrictions on the court's opportunity to customize and particularize its findings and conclusions to each individual case". *Miller v. Rombousek,* 331 N.W.2d 548, 549 (N.D.1983). We once again condemn this practice and repeat our statement in *Rombousek, supra,* that in order to facilitate a meaningful appellate review in these cases, the trial court in the future should enter "full and specific findings showing the underlying basis upon which the court has reached its determination as to whether or not the respondent is a person requiring treatment under Chapter 25–03.1, N.D.C.".

The record of the involuntary commitment hearing reveals that Mattson and Schmidt testified in support of the petition, while Debra testified in her own behalf. Mattson testified about the incidents which had occurred in Minot prior to Debra's most recent hospitalization, but he admitted that he had not seen her since the date of her admission to the State Hospital.

Schmidt, a clinical psychologist at the State Hospital who had interviewed Debra during her present admission, testified that she "presently carries a diagnosis of schizophrenia, undifferentiated type, chronic, with acute exacerbations and borderline intellectual functioning". He explained the diagnosis as follows:

'Borderline intellectual functioning' is a category of intelligence between normal and mental retardation; it's on the borderline. 'Schizophrenia' is a thought disturbance; 'undifferentiated' meaning that there are no specific major symptoms; it's sort of a combination of different symptoms of the thought disorder; 'chronic' meaning that it has a long history over two years; 'acute exacerbations' meaning that we're having an acute out-

break of active psychotic state at this point."

Schmidt testified that this diagnosis was based on interviews he had conducted with Debra during the early phases of her treatment. He stated that during one such interview, she informed him that she was experiencing auditory hallucinations, stating that Schmidt's voice was telling her to kill herself because if she did not, he was "going to die in a car wreck". The psychologist also testified that Debra often spoke of "trying to string herself up in the bathroom and also by wrapping a robe around her neck trying to strangle herself". They also discussed the suicidal behavior she had exhibited in Minot. Also, she had stated that she was depressed and that "life wasn't worth living". He characterized the interviews as evidencing "some pretty extensive-looking suicidal behavior".

Schmidt also testified, however, that Debra's condition was better than it was when she was first admitted to the State Hospital and that for three weeks prior to the hearing she had been taken off "close observations" in which special suicide precautions are taken. He stated that she is less depressed than she was earlier in her treatment and that the hospital staff is now starting to work on Debra's improving herself. Debra testified that she no longer has thoughts about suicide; that life is now worth living; and that she currently has feelings of self-worth.

■ Because of the psychologist's testimony that Debra is improving and Debra's own testimony to the effect that she is no longer suicidal, the appellant argues that the trial court erred in finding that Debra is a person requiring treatment. We do not agree.

Despite Debra's recent improvements at the State Hospital, Schmidt agreed that if she were not hospitalized at the present time, she would pose a serious risk of harm to herself. He testified:

"Although she is not doing suicidal types of things right now, she is not completely stabilized. She still is doing some things that we consider to be kind of impulsive and, clinically, that's a dangerous picture when you have a person who has a history of suicidal behavior and is presently doing impulsive things; that's a dangerous picture.

.        .        .        .        .

"Knowing what we know, knowing the research ... on suicidal behavior, people who have repeated attempts are more likely to attempt again. When she came into the hospital she was doing actively suicidal things. She has had a period of just under three weeks of not doing actively suicidal things. In my opinion this is not a long enough period to where I could say she was stable and that suicide was not a potential threat if we took away the structure and supervision of the hospital."

No expert testimony appears in the record which is inconsistent with these observations. Although Debra testified to the effect that she is no longer in need of treatment, we believe, upon reviewing the record, that the trial court could find by clear and convincing evidence that Debra is mentally ill and that there exists a reasonable expectation that she poses a serious risk of harm to herself, and that she is therefore a "person requiring treatment", as defined under § 25–03.1–02(11), N.D.C.C. Accordingly, we conclude that the trial court's finding is not clearly erroneous.

### II

Debra also argues in the alternative that the trial court erred in ordering that she be committed to the State Hospital rather than ordering that she submit to less restrictive alternative treatment.

■ An individual who is found by a trial court to be a "person requiring treatment" under § 25–03.1–02(11), N.D.C.C., has a right to be submitted to the least restrictive conditions necessary to achieve the purposes of treatment. § 25–03.1–40(2), N.D.C.C. Section 25–03.1–21, N.D.C.C., provides in pertinent part as follows:

"*25–03.1–21. Alternatives to hospitalization.* Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility.

"If the court finds that a treatment program other than hospitalization is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon himself or others, the court shall order the respondent to receive whatever treatment other than hospitalization is appropriate for a period of ninety days...."

■ Under § 25–03.1–21, N.D.C.C., the trial court must make a twofold inquiry: (1) whether or not a treatment program other than hospitalization is adequate to meet an individual's treatment needs; and (2) whether or not an alternative treatment program is sufficient to prevent harm or injuries which the individual may inflict upon himself or others. For the reasons stated in our opinion in *Dayap v. Kupperion*, 331 N.W.2d 22 (N.D.1983), we believe a trial court's determination of whether or not there is clear and convincing evidence that a treatment program other than hospitalization is not adequate and that this alternative treatment is not sufficient to prevent harm or injuries which an individual may inflict upon either himself or others is a finding of fact which our court will not set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P.

In the present case, the petitioner submitted a "Report of Examination" which addressed the possibility of alternative treatment. The witnesses were also questioned during the hearing about treatment alternatives. At the close of the hearing the trial court stated that although alternative treatment is a "speculative possibility, it is ... my judgment that if an impulsive act would end her life that that treatment would never even become available". The court's written findings noted that "a treatment program other than hospitalization is not adequate to meet the Respondent's treatment needs and is not sufficient to prevent harm or injuries which the individual may inflict upon herself or others".[1]

■ The psychologist's "Report of Examination" contained the following comments in regard to alternative treatment:

"5. A list of forms of care and treatment that may serve as alternatives to involuntary hospitalization are as follows: Not appropriate.

"6. Alternative treatment is not in the best interests of the Respondent or others and the Respondent is in need of hospitalization for the following reasons: Potential for suicidal behavior requires structured supervised setting."

While we would prefer that a more thorough explanation of possible alternatives and reasons for their applicability or nonapplicability in given situations be included in these reports, in light of the testimony elicited during the hearing which addressed the possibility of treatment alternatives, we cannot say that the trial court's determination that Debra requires hospitalization rather than less restrictive alternative treatment is clearly erroneous.

The record of the hearing reveals the following dialogue between counsel and Schmidt:

Q "(By Wendy Schulz, assistant state's attorney) Doctor, is there any viable alternative treatment at the present time to hospitalization that would be appropriate for Deb?

---

1. This written finding was also part of the preprinted form whereby the trial court crossed out inapplicable statements. No written findings were entered which reflect the underlying basis for this determination. We also disapprove of this practice and urge the trial court in the future to enter full, specific, and individualized written findings showing the underlying basis for its ultimate finding that inpatient treatment, rather than outpatient treatment, or vice versa, is required.

A "I would prefer not. I would ... very much prefer that she have the constant structure and supervision of the hospital.

Q "... could you explain why?

A "Again, because I don't see her behavior as being—she hasn't had a long enough period of stable behavior without suicidal behavior to convince me that it's no longer a threat.

.    .    .    .    .

Q "(By Joanne H. Ottmar, counsel for Daugherty) Now you had stated, Dr. Schmidt, that you would prefer that she not be given alternative treatment, right?

A "I would prefer that, yes.

Q "But do you feel that it is possible that she could function under that at the present time knowing that she has had three weeks of no suicidal behavior?

A "I guess ... you have to look at ... clinical judgment is a real gray area, O.K.? And the conservative side of me says she really should be hospitalized. I would see it as taking a chance. I wouldn't be violently opposed to it, but I would be opposed to it.

Q "So you are saying that there is a chance, though, that could be, could work?

A "I would see it as some risk, but a possibility.

.    .    .    .    .

Q "(By Schulz) ... I just want to clarify you, in answer to counsel's question you said that there might be some possibility that alternative treatment would work. But as I understand it, your position is still that, clinically speaking, what you've observed and what you can tell and based on your ability to make clinical judgments, that there would be a risk of harm?

A "There would be risk, there would be risk involved, yes."

Based upon the testimony recited above, we conclude that the trial court could properly find by clear and convincing evidence that a treatment program other than hospitalization is not adequate for Debra and that alternative treatment is not sufficient to prevent harm or injuries Debra may inflict upon herself and, therefore, the trial court's finding in this regard is not clearly erroneous.

For the reasons stated in this opinion, the order of the county court is affirmed.

ERICKSTAD, C.J., and PEDERSON, J., concur.

SAND, Justice, concurring specially and dissenting.

I concur in the result but I do not agree that the clearly erroneous rule applies because it is incompatible and inconsistent with the clear and convincing rule which applies. See my special concurrence and dissenting opinion in *Miller v. Rambousek*, 331 N.W.2d 548 (N.D.1983); *Dayap v. Kupperion*, 331 N.W.2d 22 (N.D.1983).

VANDE WALLE, J., concurs.