**In the Interest of Jill ABBOTT, Respondent and Appellant.**

**Civ. No. 10975.**

Supreme Court of North Dakota.

June 10, 1985.

James F. Twomey, Asst. State's Atty. (argued), Fargo, for petitioner and appellee; argued by Mr. Twomey.

Kirschner and Baker, Fargo, for respondent and appellant; argued by Al Baker, Fargo.

ERICKSTAD, Chief Justice.

Jill Abbott appeals from an order of the County Court of Cass County requiring that she be hospitalized and treated at the North Dakota State Hospital or a private facility for a period of ninety days. We affirm.

On March 14, 1985, a mental health professional, Norman Lunde, caused Jill Abbott to be taken into custody and detained at St. Luke's Hospital in Fargo pursuant to the emergency detention and hospitalization procedures of Chapter 25–03.1, N.D. C.C. A petition requesting the county court to order involuntary commitment of and treatment of Jill was filed by Jill's father, Lowell Abbott, on March 15, 1985.

Dr. David A. Sharbo, a licensed physician and psychiatrist practicing at The Neuropsychiatric Institute Hospital and at St. Luke's Hospital, examined Jill on March 14 and 15. At the preliminary hearing held on March 18, the county court found probable cause to believe that Jill was a person requiring treatment, and ordered that she be detained for fourteen days for involuntary treatment. Jill was thereafter placed in the care of Dr. Sharbo.

On March 29, 1985, an involuntary treatment hearing was held at which testimony from Dr. Sharbo and Jill was received. Following the hearing, the trial court issued its order, accompanied by findings of fact and conclusions of law.[1] The court determined that Jill is severely mentally ill, and as a result of such a condition requires treatment and hospitalization for a period

---

1. The trial court made the following findings and conclusions:

"The Court finds that Jill Abbott is 25 years of age and that she is a resident of Cass County, North Dakota. The Court finds that she has been under the care of Dr. Sharbo for the last two weeks. That Dr. Sharbo has known her for approximately five years and has treated her for mental illness on and off for the past five years.

"The Court finds that approximately two weeks ago Miss Abbott was brought by her parents to see a social worker at Southeast. The social worker filed an emergency detention and placed her at the T.N.I. Unit at St. Luke's.

"The Court finds that Dr. Sharbo has talked with Miss Abbott today and talked with her every week day during the last two weeks. He has diagnosed schizo-affective disorder and that she has shown a slight improvement during the two weeks particularly since she began taking medication a week to ten days ago.

"The Court finds that Miss Abbott's physical health is good. That she still continues to laugh inappropriately and continues to hear voices and she still shows a lack of judgment and has a long-standing delusional system which includes believing that she is going to marry a rockstar or that she is married to God who will care for all of her physical needs.

"Late in the summer of 1984 she was released from a halfway house in Duluth and returned to Fargo. She enrolled in school and was living in her own apartment. Sometime in 1985 her school performance began to drop

and her parents noticed her to be giggling inappropriately and showing delusions. The Respondent appeared not to be caring for herself in her physical appearance and subsisting on pop and cigarettes when her parents brought her to see Norm Lunde two weeks ago.

"The Court finds that Miss Abbott has been taking two kinds of medication, anti-psychotic and anti-manic. The Court finds that during the last two weeks Miss Abbott has been in the TNI Ward at St. Luke's.

"The Court finds that Miss Abbott ran into financial difficulty shortly before she was hospitalized. She explained that she made phone calls totaling $195.00 and she could not pay her bills. She is receiving social security benefits. When budgeting properly she is able to take care of all her needs. The phone calls were an attempt to get in touch with people who could get in touch with her rockstar.

"Approximately three-four years ago when hitchhiking a man tried to kill her. However, she reports she did not receive any injuries.

"The Court further finds that Miss Abbott believes she does not need to be hospitalized nor does she want to take medication. She explains she may be pregnant and the medication may harm the baby. If released today, she wants to return to her apartment. She does not want contact with Dr. Sharbo.

"The Court finds that Dr. Sharbo recommends further hospitalization so that the Respondent may be in a structured environment and she would be taking the necessary medication.

"The Court concludes that Jill Abbott is a person requiring treatment in that she is severely mentally ill."

of ninety days or until further order of the court. Jill decided to exercise her right to appeal from the trial court's order and filed her notice of appeal on April 29, 1985.

In appeals to this Court from orders of involuntary commitment, our scope of review is "limited to a review of the procedures, findings, and conclusions of the lower court." § 25–03.1–29, N.D.C.C. Jill disputes only the trial court's finding that she is severely mentally ill.

A "person requiring treatment" is defined in Subsection 25–03.1–02(11), N.D. C.C., as follows:

" 'Person requiring treatment' means either a person:

a. Who is suffering from severe mental illness, severe alcoholism, or severe drug addiction. 'Severe' means that the disease or addiction is associated with gross impairment of the person's level of adaptive functioning as outlined by axis V of the diagnostic and statistical manual of mental disorders of the American psychiatric association; or

b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property. 'Serious risk of harm' means a substantial likelihood of:

(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

For the trial court to order involuntary treatment of a respondent the petitioner must prove by clear and convincing evidence that the respondent is a person requiring treatment. § 25–03.1–19, N.D.C.C. In prior decisions, a majority of our Court

has expressed the view that the trial court's determination of whether or not there is clear and convincing evidence that a respondent is a person in need of treatment is a finding of fact which we will not set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *See In re Daugherty*, 332 N.W.2d 217, 219 (N.D.1983); *In re Rambousek*, 331 N.W.2d 548, 549 (N.D.1983); *In re Kupperion*, 331 N.W.2d 22, 26–28 (N.D.1983). Notwithstanding the difference of opinion expressed in prior decisions between present and past members of this Court concerning the application of Rule 52(a) to these proceedings, we will not expound upon the issue here, as it is our view that the undisputed facts of this case clearly support the trial court's determination that Jill is a person requiring treatment.

Dr. Sharbo testified:

"Q Doctor, from your meetings with the respondent and your observations of her and during the last two-week period, have you formed an opinion as to her present mental state?

"A Yes, I have.

"Q What is your opinion, Doctor?

"A I believe she has a severe mental illness. The specific diagnosis is schizoaffective disorder, which is a disturbance of both her mood and also her ability to think logically and reasonably.

"Q Doctor, based on your opinion do you believe that there is a substantial—there is a risk, serious risk of harm to the respondent or to others or to others' property if the respondent does not receive treatment?

"A Yes, I do.

"Q And in what way do you see the dangers that I've outlined?

"A Well, the danger is primarily to Jill. She lacks judgment even to the point where she can protect herself from the hazards in the world about her; and she has a dilusional system which has her involved with a rock star that she is seeking to marry. She also at other times has expressed the belief that she is

married to God and that God will care for her, and she doesn't have to do things like the rest of us mortals do such as eat and wash and care for our physical well-being.

"Q Have you seen any improvement in the last two weeks?

"A Slight, yes.

"Q. Can you explain that to the Court?

"A. ....

She continues to laugh inappropriately on the unit. It appears she's still hearing voices and laughing in response to those voices. Occasionally she'll say something as if she's responding to the voice. But it's less frequent than premedication."

The record contains no medical evidence to dispute Dr. Sharbo's testimony that Jill is severely mentally ill and poses a serious risk of harm primarily to herself.

Jill's primary concern is that the record contains no evidence to indicate that Dr. Sharbo's use of the word "severe," in describing her mental illness, corresponds to that definition of "severe" set forth in Section 25–03.1–02(11)(a), that is, "that the disease or addiction is associated with gross impairment of the person's level of adaptive functioning as outlined by axis V of the diagnostic and statistical manual of mental disorders of the American psychiatric association."

 It appears that the trial court could have just as easily and properly found, based upon the testimony of Dr. Sharbo, that Jill is a person requiring treatment pursuant to Section 25–03.1–02(11)(b). Nevertheless, we will not assume, in the absence of contrary evidence, that Dr. Sharbo, a licensed psychiatrist, would use the word "severe" in expressing, for purposes of the involuntary commitment proceeding, his professional opinion as to Jill's mental state in a context or in any manner other than in accordance with the diagnostic and statistical manual of mental disorders of the American Psychiatric Association which is what the statute requires. We must assume that a psychiatrist would speak in the language of psychiatry and its manuals.

 In our opinion, the trial court could properly find by clear and convincing evidence that Jill is severely mentally ill and is therefore a "person requiring treatment" pursuant to Subsection 25–03.1–02(11)(a), N.D.C.C. Accordingly, the court's order requiring Jill's hospitalization and treatment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.