In the Interest of ROSENTHAL.

Phyllis ROSENTHAL, Petitioner
and Appellee,

v.

Ron ROSENTHAL, Respondent
and Appellant.

Civ. No. 11307.

Supreme Court of North Dakota.

Aug. 20, 1986.

Kenneth L. Dalsted, Asst. State's Atty., Jamestown, for petitioner and appellee.

William A. Mackenzie of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for respondent and appellant.

VANDE WALLE, Justice.

Ron Rosenthal appealed from an order of the county court of Stutsman County requiring that he be hospitalized and treated for mental illness for a period not to exceed 90 days. We affirm in part, reverse in part, and remand for further proceedings.

On June 13, 1986, Phyllis Rosenthal, Ron's mother, filed a petition requesting the court to order involuntary commitment of and treatment for Ron pursuant to Chapter 25-03.1, N.D.C.C. Ron was committed to the State Hospital under a temporary treatment order for a period of 14 days. See Sec. 25-03.1-17, N.D.C.C.

An involuntary-commitment hearing was held on July 2, 1986, pursuant to Section 25-03.1-19, N.D.C.C. Following the hearing, the court entered its order requiring that Ron be hospitalized and treated at the North Dakota State Hospital for a period not to exceed 90 days. Ron raises the following two issues on appeal:

1) Whether the court's determination that Ron required treatment was supported by clear and convincing evidence; and

2) Whether the court's determination that alternative treatment was not ap-

propriate was supported by clear and convincing evidence.

The first issue we are presented with is whether Ron is a "person requiring treatment." Section 25–03.1–02, N.D.C.C., provides, in relevant part:

"11. 'Person requiring treatment' means either a person:

.    .    .    .    .

"b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property."

At the treatment hearing, Dr. Fe Cabuso, a psychiatrist employed at the State Hospital, testified that Ron suffered from atypical psychosis and substance abuse. Dr. Cabuso's diagnosis was based upon two interviews with Ron, as well as her observations of Ron at the State Hospital. Ron does not contest the finding that he is mentally ill on this appeal. Therefore, the first finding required by the statute to determine that Ron is a person requiring treatment, i.e., that Ron is mentally ill, is not an issue for the purposes of this appeal.

The second finding required by Section 25–03.1–02 is that "there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property." Section 25–03.1–02(11) defines "serious risk of harm" as follows:

"Serious risk of harm" means a substantial likelihood of:

"(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicide potential;

"(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

"(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

There were neither claims of, nor testimony relating to, a substantial likelihood of suicide. Additionally, the court's findings do not relate to either subsection 1 or 2. Therefore, any determination that Ron is a person requiring treatment must be based upon subsection 3 of Section 25–03.1–02(11)(b).

The court stated in its findings, "That the respondent needs help from others to care for his physical needs such as food, etc." The court further found that "the respondent suffers from a mental disorder described as atypical psychosis and substance abuse." On the basis of these findings, the court concluded that "there is a substantial likelihood of substantial deterioration in physical health or death resulting from poor self-control in providing his own personal care."

In *Dayap v. Kupperion*, 331 N.W.2d 22, 26 (N.D.1983), we stated:

"In involuntary commitment proceedings, the evidence must establish that the individual involved is a person requiring such treatment. § 25–03.1–07, N.D.C.C. The burden of proof in these proceedings lies with the petitioner, and there is a presumption in favor of the respondent that he or she does not require treatment. § 25–03.1–19, N.D.C.C. Furthermore, in order for an involuntary commitment petition to be granted, it must be sustained by evidence which is clear and convincing. § 25–03.1–19, N.D.C.C.; *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)."

As was stated in *Dayap*, there must be clear and convincing evidence that Ron requires treatment. While the evidence here is not overwhelming, it is sufficient. Dr. Cabuso testified that Ron suffered from marijuana and alcohol abuse. Dr. Cabuso additionally testified that Ron often failed to take his medication, and occasionally used medicine which was prescribed for others. Dr. Cabuso also stated that Ron frequently spoke of the Devil getting him and of the room being "bugged." Dr. Cabuso further testified, on the basis of her review of Ron's psychosocial history

and mental examinations, that Ron had been wandering around Minot at night and had suffered a seizure which resulted in hospitalization. Dr. Cabuso attributed this seizure to alcohol withdrawal.

Based upon the testimony of Dr. Cabuso, the finding that Ron Rosenthal is in need of treatment is supported by clear and convincing evidence. Therefore, the court's conclusion that Ron was a person requiring treatment is affirmed.

Despite the fact that Ron needed some sort of treatment, it does not necessarily follow that he must be committed to the State Hospital. As this court has stated, "[a]n individual who is found by a trial court to be a 'person requiring treatment' under § 25–03.1–02(11), N.D.C.C., has a right to be submitted to the least restrictive conditions necessary to achieve the purposes of treatment. § 25–03.1–40(2), N.D.C.C." *In the Interest of Daugherty*, 332 N.W.2d 217, 220 (N.D.1983).

The main concern expressed by the trial court was that Ron was not capable of providing for his physical needs such as food. The court concluded that "there is a substantial likelihood of substantial deterioration in physical health or death resulting from poor self-control in providing his own personal care." On that basis, the court further concluded that alternative treatment was not appropriate.

However, the findings do not support the conclusion that alternative treatment was not appropriate. Only two findings apply: first, that Ron suffered from a mental disorder described as atypical psychosis and substance abuse; second, that Ron needs help from others to care for his physical needs such as food, etc. These findings fail to support the conclusion that alternative treatment is not appropriate.

Conversely, the court's statement that alternative treatment was not appropriate may have been a finding of fact rather than a conclusion of law. "Whether a particular determination is a finding of fact or a conclusion of law is to be determined by the reviewing court and labels placed upon findings or conclusions by the trial court

are not conclusive." *Dayap v. Kupperion, supra,* 331 N.W.2d at 27; *Oakes Farming Assn. v. Martinson Bros.,* 318 N.W.2d 897 (N.D.1982); *E.E.E., Inc. v. Hanson,* 318 N.W.2d 101 n. 3 (N.D.1982).

■ To support a finding that alternative treatment was not appropriate, there must be clear and convincing evidence that hospitalization was necessary to provide for Ron's physical needs, such as food. The only evidence relating to this was Dr. Cabuso's testimony. Dr. Cabuso stated that she understood that Ron's mother had purchased groceries for him and had him over for meals occasionally. Dr. Cabuso further testified that Ron sometimes failed to take his medication. This is not the clear and convincing evidence necessary to support the trial court's finding that alternative treatment was not appropriate.

There were some general assertions in the record of a history of prior commitments, as well as vague references relating to a failure by Ron to comply with treatment prescribed for him. If evidence supporting these assertions and references had been fully and clearly disclosed and developed in the record, a finding that alternative treatment was not appropriate may have been proper. See *Storsteen v. Cuypers,* 389 N.W.2d 812 (N.D.1986). However, such evidence was only obscurely brought out through Dr. Cabuso's testimony, and the records upon which she may have based her testimony are not before us on this appeal. Therefore, despite these assertions and references, there was no clear and convincing evidence to support the trial court's finding that alternative treatment was not appropriate.

Section 25–03.1–21 requires the court to review a report assessing the availability and appropriateness for alternative treatment. In the present case, Dr. Monserrat Wyman examined Ron and prepared a report outlining the results of that examination. In that report, Dr. Wyman states that Ron

"is still actively psychotic, verbally abusive to other patients and unit staff mem-

bers. Can be verbally and physically aggressive to others. Very demanding and belligerent if he does not get what he wants; interferes with other patients' treatment, very suspicious of others and verbalizes that he does not need his medication. Insight and judgement are impaired. He can be dangerous to others and there is eminent mental deterioration. Needs continued psychiatric hospitalization."

Dr. Wyman continued by stating that "[a]lternative treatment is not in the best interests of the Respondent or others and the Respondent is in need of hospitalization for the following reasons: Patient's mental status is not stable. Can be dangerous to others and himself. Needs inpatient psychiatric treatment."

The basic premise of Dr. Wyman's report was that Ron could be dangerous to himself and others and, as such, alternative treatment was not appropriate. Other than the finding concerning Ron's capability of providing for his physical needs such as food, which we have already considered, the court made no finding that Ron was dangerous to himself or others. The court based its finding that alternative treatment was not appropriate solely on the fact that Ron could not care for his own personal needs. Therefore, the evidence was insufficient to require hospitalization. Because the finding that alternative treatment was not appropriate to provide Ron's physical needs was not supported by clear and convincing evidence, we must reverse and remand with instructions that the trial court further consider whether or not alternative treatment will provide for Ron's physical needs.

Pursuant to Rule 41, N.D.R.App.P., we order that the mandate shall issue August 25, 1986. After the mandate issues, the trial court shall forthwith hold a hearing to determine appropriate treatment. The order for hospitalization is reversed and we remand the case to the trial court for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.