**D. KOTTKE, M.D., Petitioner and Appellee,**

v.

**U.A.M., Respondent and Appellant.**

**In the Interest of U.A.M.**

**Civ. No. 890252.**

Supreme Court of North Dakota.

Aug. 28, 1989.

Timothy C. Wilhelm, Asst. State's Atty., Minot, for petitioner and appellee.

Richard L. Hagar, Kenner Law Firm, P.C., Minot, for respondent and appellant.

VANDE WALLE, Justice.

U.A.M. (hereinafter U.M.) appealed from an order of the county court of Ward County requiring that she be hospitalized and treated for mental illness for a period of not to exceed 90 days. We affirm the county court's order.

On May 3, 1989, U.M. was placed in detention pursuant to the emergency-treatment provisions of Chapter 25–03.1, N.D. C.C., on the grounds that she was suicidal.[1] A preliminary hearing concerning the petition for U.M.'s involuntary treatment was held on May 8, 1989, in accordance with Section 25–03.1–17, N.D.C.C. U. M. was committed to the State Hospital under a temporary treatment order for a period of 14 days. See Sec. 25–03.1–17. An involuntary-treatment hearing was held on May 22, 1989, pursuant to Section 25–03.1–19, N.D.C.C. At the treatment hearing the county court found that U.M. did not have suicidal tendencies, but did find that she was a "person requiring treatment" as defined in Section 25–03.1–02(11), N.D.C.C. The county court entered an order requiring that U.M. receive 90 days of outpatient treatment at a transitional-living home in

---

1. Penny Boomer, a mental-health professional at North Central Human Service Center in Minot, filed the petition for emergency detention and treatment. U.M. was taking ceramic classes at the Center. Penny Boomer observed a number of activities of U.M. at the Center which, according to Boomer, indicated that U.M. had suicidal tendencies.

Minot under the supervision of the North Central Human Service Center.

U.M.'s outpatient treatment at the transitional-living home was less than successful. On June 24, 1989, a second proceeding for involuntary treatment was begun when Dr. Dennis B. Kottke, a psychiatrist employed at the State Hospital, filed a petition for the involuntary commitment of U.M. to the State Hospital in Jamestown pursuant to Section 25–03.1–08, N.D.C.C.[2] Dr. Kottke also filed an examination report with his petition concluding that U.M. was suffering from a mental illness; that she presented a serious risk of harm to herself, others, or property; and that she was in need of hospitalization. Dr. Kottke's report noted that other forms of alternative treatment, such as outpatient care, were not in U.M.'s best interests.

U.M. waived her right to a preliminary hearing on the second involuntary-treatment petition, and on June 28, 1989, the county court ordered her committed to the State Hospital under a temporary-treatment order for a period of 14 days. The second involuntary-treatment hearing was commenced on July 12, 1989, pursuant to Section 25–03.1–19. On July 13, 1989, the county court again found U.M. to be a "person requiring treatment" under Section 25–03.1–02(11) and entered an order requiring that she be hospitalized and treated at the North Dakota State Hospital for a period of not to exceed 90 days.

■ U.M. filed an expedited appeal to this court from the county court's July 13,

1989, order for involuntary commitment. The two issues before us on this appeal are:

1) Whether the county court's determination that U.M. required treatment was supported by clear and convincing evidence; and, if it was,

2) Whether the county court's determination that alternative treatment was not appropriate was supported by clear and convincing evidence.

Section 25–03.1–02(11) provides in relevant part:

"11. 'Person requiring treatment' means either a person:

. . . . .

"b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property. 'Serious risk of harm' means a substantial likelihood of:

"(1) Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

"(2) Killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats; or

"(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."[3]

---

2. Dr. Kottke's petition noted that U.M. had become physically aggressive and verbally abusive to others in the group home during her outpatient treatment. Dr. Kottke further asserted that U.M. had made threats toward her case manager and had displayed other forms of inappropriate behavior in the group home.

3. In 1989, the North Dakota Legislature amended the definition of a "person requiring treatment" in Section 25–03.1–02, N.D.C.C. The amended definition provides:

"10. 'Person requiring treatment' means a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. 'Serious risk of harm' means a substantial likelihood of:

"a. Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

"b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

"c. Substantial deterioration in physical health, or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

"d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

There is a presumption in favor of the respondent that he or she does not require treatment. Section 25–03.1–19; *Rosenthal v. Rosenthal,* 392 N.W.2d 796 (N.D.1986); *Dayap v. Kupperion,* 331 N.W.2d 22 (N.D. 1983). Before a court can order the involuntary treatment of a respondent, the petitioner must prove by clear and convincing evidence that respondent is a person requiring treatment. Section 25–03.1–19; *Schmidt v. Daugherty,* 332 N.W.2d 217 (N.D.1983); *Miller v. Rambousek,* 331 N.W.2d 548 (N.D.1983). The determination that an individual is a person requiring treatment under the statutory definition is essentially a two-step process. Initially, the court must find that the individual is "mentally ill," and, secondly, it must further find that "there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property." See Section 25–03.1–02(11); *Rosenthal v. Rosenthal, supra.* Under Section 25–03.1–29, the scope of this court's review is limited to the examination of the procedures, findings, and conclusions of the lower court. See Section 25–03.1–29, N.D.C.C.; *In re Riedel,* 353 N.W.2d 773 (N.D.1984). In prior decisions, a majority of our court has expressed the view that the trial court's determination of whether or not there is clear and convincing evidence that the respondent is a person in need of treatment is a finding of fact which we will not set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. See *In re Abbott,* 369 N.W.2d 116 (N.D.1985); *Schmidt v. Daugherty, supra; Miller v. Rambousek, supra,* 331 N.W.2d at 552 (VandeWalle, J., concurring specially); *Dayap v. Kupperion, supra.*

In the present case, the county court determined that U.M. was a person requiring treatment as defined by the statute. The findings entered by the court, which would reflect the underlying basis for the court's determination that U.M. was a person requiring treatment, were sparse and conclusory in form. In the past, this court has urged trial courts to enter "full and specific findings" showing the underlying basis for the court's decision that an individual is a person requiring treatment. *Schmidt v. Ebertz,* 333 N.W.2d 786, 789 n. 2 (N.D.1983); *Schmidt v. Daugherty, supra; Miller v. Rambousek, supra.* In order to facilitate meaningful review on appeal, we again emphasize the need for trial courts, in future cases, to enter full and specific findings as to whether or not individuals are persons requiring treatment. Our admonition applies with equal or even greater force where, as here, counsel is requested to prepare proposed findings and conclusions for the court. Nevertheless, in this case we conclude that there was sufficient clear and convincing evidence presented to allow the county court to enter findings that U.M. was a person requiring treatment under Section 25–03.1–02(11).

It is apparent that the county court relied heavily on the testimony of Dr. Kottke in making its determination that U.M. was a person requiring treatment. At the involuntary-treatment hearing on July 12, Dr. Kottke testified that U.M. suffered from post-traumatic stress disorder. Dr. Kottke stated that post-traumatic stress disorder is a mental illness, and that in the case of U.M. this disorder was coupled with clearly obsessive features and a strong paranoid component. Dr. Kottke additionally testified that U.M. would hallucinate, hear voices, and talk to herself to the point that she could not be interrupted. Furthermore, Dr. Kottke noted that while she was in outpatient treatment at Minot, U.M. would stand outside and yell at passing cars, would make threats against her case manager, would at times be unable to move through hallways and doorways, and would at times fail to use the bathroom facilities as she felt very uncomfortable in the bathroom and with the sound of flushing noises.

At the treatment hearing, Dr. Kottke also expressed his opinion that U.M. would likely suffer a serious risk of harm to her-

The 1989 amendment of this section became effective on July 18, 1989. As the petition for involuntary treatment in the current case was filed on June 24, 1989, we apply the former version of Section 25–03.1–02.

self when he testified that she would substantially deteriorate if left on her own or in treatment in the community. Dr. Kottke testified that U.M. did not eat very regularly, and he stated his belief that she would not eat regular and nutritious meals if left on her own. Dr. Kottke further stated that U.M. was very reluctant to take her medication, and would refuse to accept medication if discharged. Finally, Dr. Kottke testified about insanitary and unhealthful incidents that occurred when U.M. refused to use the bathroom facilities at the group home while undergoing outpatient treatment in Minot.

Although U.M., through her brief and oral argument of counsel, offers alternative explanations and rationalizations for her behavior, no expert testimony appears in the record which contradicts the testimony of Dr. Kottke. The only testimony in U.M.'s behalf at the hearing was from U.M. and from Frances Rothgarn, a friend of U.M., who had known her for 14 years but who had only sporadic contact with U.M. in the months immediately preceding the hearing. The testimony of U.M. and Rothgarn was to the effect that U.M. no longer was in need of treatment. A court is not required to accept the testimony of expert witnesses as conclusive and has the right to judge the credibility of those witnesses. But if there is no contrary expert testimony in the record, the reasons for disregarding the expert testimony should be explained. See, e.g., *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692 (N.D.1978). Although Dr. Kottke's basis for his conclusions may be challenged, we are not prepared to conclude that the trial court erred in implicitly rejecting U.M.'s explanation for the behavior that formed the basis for Dr. Kottke's conclusions.

Dr. Kottke's testimony that U.M. was mentally ill and posed a serious risk of harm to herself if not hospitalized justifies the county court's finding, by clear and convincing evidence, that U.M. is a person in need of treatment. We affirm that finding.

■ The second issue to be decided is whether alternative treatment is inappropriate for U.M. When an individual is found by a trial court to be a "person requiring treatment" under Section 25–03.-1–02(11), he or she has a right to be submitted to the least restrictive conditions necessary to achieve the purposes of treatment. Sec. 25–03.1–40(2), N.D.C.C.; *Rosenthal v. Rosenthal, supra; Schmidt v. Daugherty, supra.*

Section 25–03.1–21, N.D.C.C., provides in pertinent part:

"*25–03.1–21. Alternatives to hospitalization.* Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility.

"If the court finds that a treatment program other than hospitalization is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon himself or others, the court shall order the respondent to receive whatever treatment other than hospitalization is appropriate for a period of ninety days."

In applying this section the trial court must again make a twofold inquiry: (1) whether or not a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether or not an alternative treatment program is sufficient to prevent harm or injuries which an individual may inflict upon himself or others. *North Dakota State Hosp. v. Palmer*, 363 N.W.2d 401 (N.D.1985); *Schmidt v. Daugherty, supra.* In making its decision the trial court must determine by clear and convincing evidence that alternative treatment is not adequate or that hospitalization is the least restrictive alternative. *Storsteen v. Cuypers*, 389 N.W.2d 812 (N.D.1986); *North Dakota State Hosp. v. Palmer, supra.* A majority of this court has held that the trial court's determination of whether or not there is clear and convincing evidence that a treatment program

other than hospitalization is inadequate is a finding of fact which will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Schmidt v. Daugherty, supra.*

■ In the present case there was sufficient evidence presented to allow the county court to determine, by clear and convincing evidence, that the least restrictive alternative for the treatment of U.M. was inpatient treatment at the North Dakota State Hospital for a period of 90 days.[4] Dr. Kottke submitted a "Report of Examination" with his petition for involuntary treatment which addressed the possibility of alternative treatment. The psychiatrist's report stated that no treatment alternatives to involuntary hospitalization were available. The report noted that community placement and outpatient treatment were previously utilized but were not successful. Dr. Kottke's report and petition for involuntary treatment indicated that while U.M. was in outpatient treatment she had become increasingly physically and verbally aggressive toward others in the group home, and that she had made threats toward her case manager. Dr. Kottke's report also indicated that hospitalization was necessary because U.M. could not take care of herself appropriately, was unwilling to take her medication, and was in need of further evaluation and medication review.

Our review of the treatment hearing record reveals further evidence that alternative outpatient treatment would be inadequate. Testimony by Dr. Kottke, while reiterating many of the points of his examination report, also indicated that U.M. has a very ambivalent and chaotic relationship with her father. Dr. Kottke noted that if U.M. were discharged from the State Hospital she would likely come under the direct care of her father. Dr. Kottke stated his opinion that release into her father's custody would be countertherapeutic.

We conclude, as a result of Dr. Kottke's examination report and testimony, that the county court could properly find by clear and convincing evidence that a treatment program other than hospitalization would be inadequate for U.M. and that alternative treatment would not prevent harm to herself or others. Therefore, the county court's determination in this regard was not clearly erroneous.

The order of the county court requiring U.M. to be hospitalized and treated for mental illness for a period not to exceed 90 days is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

4. The findings by the county court, which would reflect the underlying basis for the court's determination that the least restrictive alternative for the treatment of U.M. was inpatient treatment at the State Hospital, were also scant. In the past we have urged trial courts to enter full and specific findings regarding the availability of alternatives to hospitalization. See, e.g., *Schmidt v. Daugherty,* 332 N.W.2d 217, 221 n. 1 (N.D.1983). Today we again emphasize the need for trial courts to enter full and specific findings in this area.