In the Interest of R.N.

Dr. Barbara J. **RADMORE,**
Petitioner and Appellee,

v.

**R.N., Respondent and Appellant.**

Civ. No. 890403.

Supreme Court of North Dakota.

Jan. 18, 1990.

Constance Louise Cleveland, Asst. State's Atty., Bismarck, for petitioner and appellee.

Edwin W.F. Dyer III of Dyer & Summers, Bismarck, for respondent and appellant.

LEVINE, Justice.

R.N. appeals from an order of the Burleigh County Court committing her to the North Dakota State Hospital for ninety days to receive treatment for mental illness. We reverse.

Pursuant to NDCC § 25–03.1–25(1), R.N. was committed to the North Dakota State Hospital on an emergency basis upon the application of Dr. William Eelkema, a physician at Medcenter One in Bismarck. The application, dated November 7, 1989, stated that R.N. was believed to be mentally ill based upon the fact that she "has been roaming the halls of the hospital, grabbing people by the arm & threatening them, calling people bastards & saying her name is Nancy Ann—Not [R.]—she is not oriented to time, place or person—she can barely walk straight & is threatening to drive." The application recited that, based upon the described overt acts, R.N. "can reasonably be expected to cause serious physical injury to himself [sic] or others if not immediately detained." The next day, Dr. Barbara J. Radmore, a psychiatrist at the State Hospital, filed a petition for the invountary commitment of R.N. A treatment hearing was held November 29, 1989.

Following the hearing, the county court ordered R.N.'s commitment to the State Hospital for a period of ninety days.[1] The trial court found that R.N. is a person requiring treatment because she is mentally ill and, without treatment, poses a serious risk of harm to herself. Specifically, the court found a substantial likelihood of suicide and substantial deterioration in physical health if R.N. is not treated. R.N. filed an expedited appeal.

■ The dispositive issue on appeal is whether the evidence was sufficient to establish clearly and convincingly that R.N. is a person requiring treatment. She does not dispute the determination that she suffers from manic-depressive disorder and is mentally ill. She argues, however, that there is a lack of clear and convincing evidence supporting the trial court's finding that she requires treatment because of a substantial likelihood of suicide and a substantial deterioration in her physical health.

■ This Court's review in involuntary commitment cases is limited to an examination of the procedures, findings and conclusions of the lower court. NDCC § 25–03.1–29; Kottke v. U.A.M., 446 N.W.2d 23, 26 (N.D.1989). A majority of our Court has expressed the view that the trial court's determination of whether there is clear and convincing evidence that the respondent is a person requiring treatment is a finding of fact which we will not set aside on appeal unless it is clearly erroneous under Rule 52(a), NDRCivP. U.A.M., supra; In re Abbott, 369 N.W.2d 116, 118 (N.D.1985); In re Daugherty, 332 N.W.2d 217, 219 (N.D.1983); In re Rambousek, 331 N.W.2d 548, 553 (N.D.1983) (VandeWalle, J., concurring specially); In re Kupperion, 331 N.W.2d 22, 26–27 (N.D.1983).

Our law authorizes an involuntary commitment only if the petitioner proves by clear and convincing evidence that the respondent is a person requiring treatment as defined under NDCC § 25–03.1–02(10). See NDCC § 25–03.1–19; O'Callahan v. L.B., 447 N.W.2d 326, 327 (N.D.1989). Section 25–03.1–19 provides a presumption

<hr />

1. Subsequent to the filing of this appeal, R.N. was transferred from the State Hospital in Jamestown to Medcenter One in Bismarck for treatment on an inpatient basis.

that the respondent does not require treatment.

Section 25–03.1–02(10) defines a "person requiring treatment" as one who is mentally ill and who, without treatment, may be reasonably expected to suffer a serious risk of harm or pose a serious risk of harm to self, others, or property. The statute also defines "serious risk of harm":

" 'Serious risk of harm' means a substantial likelihood of:

"a. Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

"b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

"c. Substantial deterioration in physical health, or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

"d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

The trial court's finding that R.N. is a person requiring treatment is based on subsections (a) and (c) of § 25–03.1–02(10). We therefore focus on the evidence in support of the findings of substantial likelihood of suicide and substantial deterioration of health.

At the treatment hearing, the petitioner relied primarily upon the testimony of Dr. Dennis Kottke, a psychiatrist at the State Hospital. Dr. Kottke testified that he had not observed R.N. in the depressive stage of her illness nor was he aware of any clinical observations of her in a depressed state. He was asked:

"Q. Dr. Kottke, are you familiar with the report that has been made and supplements to [R.N.'s] file of the suicidal threats made when [R.N.] was ranting and raving about going to the State Hospital?

"A. Yes, we were aware of that. In the Court papers, I would have to review the paper to remember exactly what the detail was, but most of the concern and reason for the admission and pursuing of the commitment was, yes."

In reading the record, we are unable to locate any reports or "supplements" to R.N.'s file which mention suicidal threats by R.N. Moreover, Dr. Kottke was not asked whether he gave any credence to these undocumented threats or, more on point, whether there was a substantial likelihood of suicide manifested by those threats. *See* NDCC § 25–03.1–02(10)(a).

Although R.N. testified, "I was in a Holy vision, and I was ready to commit suicide in your hallway, locked up like an animal," the trial court apparently discounted the seriousness of this testimony when, ruling from the bench, the Judge remarked that R.N. "most likely ... would not" commit suicide. It is error to find, as the trial court did, that someone who most likely would not commit suicide is nevertheless a person requiring treatment because of a substantial likelihood of suicide.

Likewise, the trial court's finding of a substantial likelihood of a substantial deterioration in physical health is without sufficient support in the record. Dr. Kottke testified that routine tests performed at the State Hospital revealed nothing that would show any deterioration in physical health. *See* NDCC § 25–03.1–02(10)(c). He testified that he did not believe there was any deterioration in R.N.'s physical health due to poor self care or judgment. To the contrary, R.N. "takes great pride in her appearance and taking care of herself."

Although Dr. Kottke noted that R.N., fearing the food in the State Hospital was poisoned, had induced vomiting on three occasions, he also testified that there was no observable deterioration resulting from these episodes. In response to a hypothetical question from the assistant state's attorney, Dr. Kottke stated that repeated vomiting would be dangerous to health or lead to deterioration "if it is done all the time." There was no testimony regarding

a history of self-induced vomiting before R.N.'s emergency commitment. Nor is there anything in the record to indicate a substantial likelihood that R.N. will repeatedly vomit if she is released from the State Hospital. Consequently, Dr. Kottke's generalization that repeated vomiting would lead to deterioration does not constitute clear and convincing evidence of a substantial likelihood in R.N.'s case of substantial physical deterioration in her health if she is untreated. It was clear error for the trial court to have found otherwise.

■ Thus, Dr. Kottke's testimony and the record as a whole do not support by clear and convincing evidence the trial court's finding that R.N. is a person requiring treatment, i.e., a person who poses a serious risk of harm to self if not treated. Although, as the petitioner argues, Dr. Kottke did testify that he believed R.N. was a person requiring treatment, an examination of the record reveals no support for that conclusion. Rather, the record supports only Dr. Kottke's opinion that R.N. is a person who would benefit from medication:

> "A . . . I think we feel that [R] would definitely benefit from medication, every one of us that have examined [her] have recommended that she should take Lithium or Tegretol but she has refused. . . ."

At best the record leads only to the conclusion that R.N. is a person who would *benefit* from treatment with medication and that such treatment is only possible if she were hospitalized, because she otherwise refuses to take medication. That is not the statutory standard which authorizes our courts to commit the mentally ill. The standard for involuntary commitment remains clear and convincing proof that the mentally ill individual is a person who *requires* treatment as defined by the statute, not one who would benefit from treatment. That standard was not met here. The evidence is insufficient to establish that R.N. poses a serious risk of harm to self which leads us to the conclusion that the evidence does not justify the trial court's finding by clear and convincing evidence that R.N. is a

person requiring treatment. *See U.A.M., supra*, 446 N.W.2d at 27.

Accordingly, we reverse and remand with instructions that the involuntary commitment petition be dismissed.

ERICKSTAD, C.J., MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of VandeWalle, J., disqualified.