In the Interest of J.S.

Dr. Enrique ALVAREZ, M.D.,
Petitioner and Appellee,

v.

J.S., Respondent and Appellant.

Civ. No. 930110.

Supreme Court of North Dakota.

April 27, 1993.

Kenneth L. Dalsted, Jamestown, for petitioner and appellee.

William A. Mackenzie, Jamestown, for respondent and appellant; appearance by J.S., respondent and appellant.

VANDE WALLE, Chief Justice.

J.S. appealed from a continuing treatment order of the county court of Stutsman County requiring that J.S. be hospitalized and treated for mental illness at the North Dakota State Hospital for an indefinite time. We affirm.

On November 19, 1992, the State Hospital filed a petition for an emergency commitment. NDCC § 25–03.1–25. A preliminary hearing was held on November 25, 1992, and J.S. was committed to the State Hospital for a period not to exceed 14 days. NDCC § 25–03.1–17.[1]

---

1. We were informed at oral argument that J.S. was originally committed to the State Hospital for an evaluation of his fitness to proceed to trial on a criminal terrorizing charge on Octo-

The State Hospital petitioned for a 90–day order of commitment, and a treatment hearing was held on December 9, 1992. Following the hearing, the Stutsman County Court issued an order dated December 9, 1992, committing J.S. to the State Hospital until March 10, 1993. NDCC § 25–03.1–22.

The State Hospital petitioned for a continuing treatment order, and a hearing was held on March 10, 1993. NDCC § 25–03.1–23. At the treatment hearing, the county court found that J.S. "suffers from a mental disorder which substantially impairs his capacity to use self-control, judgment and discretion, and that there is a substantial likelihood of substantial harm to others as demonstrated by past actions." The court further concluded that, "alternative treatment is not appropriate at this time, and that the treatment order should be continued for an indefinite period," and issued a continuing treatment order. NDCC § 25–03.1–22(2).

Pursuant to section 25–03.1–29, NDCC, J.S. appealed. He raises as the only issue the lack of clear and convincing evidence that he was a person requiring in-hospital treatment.

Before a court can issue an order for an involuntary treatment, the petitioner must prove by clear and convincing evidence that the respondent is a person requiring treatment. NDCC § 25–03.1–19; *In Interest of J.A.D.*, 492 N.W.2d 82 (N.D.1992). The determination that an individual is a "person requiring treatment" under the statutory definition is a two-step process: (1) the court must find that the individual is mentally ill, and (2) the court must find that there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property. NDCC § 25–03.1–02(10); *J.A.D., supra.*

■ The scope of review in appeals under section 25–03.1–29, NDCC, is limited to the examination of the procedures, findings, and conclusions of the lower court. NDCC § 25–03.1–29. The majority of our court has held that the trial court's determination that there is clear and convincing evidence the respondent is a person in need of treatment is a finding of fact which we will not set aside on appeal unless it is clearly erroneous. Rule 52(a), NDRCivP; *J.A.D., supra; Kottke v. U.A.M.*, 446 N.W.2d 23 (N.D.1989); *In Interest of Rambousek*, 331 N.W.2d 548, 552 (N.D.1983) [VandeWalle, J., concurring specially]. We therefore focus on the evidence indicating that J.S. was mentally ill and that there was a substantial likelihood of substantial harm to J.S., others, or property, to determine if there is clear and convincing evidence to support the findings of the trial court. *J.A.D., supra; In Interest of M.H.*, 475 N.W.2d 552 (N.D.1991).

■ The only witness to testify was Dr. Leonardo Arevalo, J.S.'s psychiatrist at the State Hospital. His testimony revealed that J.S. is delusional, has a propensity for aggressive behavior, and had recently assaulted another patient without provocation. Dr. Arevalo diagnosed J.S.'s illness as schizophrenia paranoid, chronic. He further testified:

"A His judgment is impaired ... He's in such poor condition that he doesn't realize that he needs help.... One of the most important aspects of the treatment is the medication intake.

"Q. Has he refused to take that?

"A. He's refused the other medicine....

"Q. Has other medication been suggested to him?

"A. Yes, it's been suggested ... but he refuses to take any other medications.[2]

\* \* \* \* \* \*

ber 6, 1989. *See* NDCC § 12.1–04–08. After an evaluation that month, he was found unable to assist in his own defense of the underlying criminal charge, and was committed to the State Hospital for a period not to exceed three years. *See* NDCC § 12.1–04–08 [amended 1991 N.D. Laws, chapter 121, § 3]. A guardian was appointed for J.S. on July 5, 1992. The original commitment expired on October 4, 1992, and the underlying criminal charge was dismissed. J.S.'s guardian signed a voluntary admission for treatment for a period of 45 days that expired on November 19, 1992, and he remained in the State Hospital.

2. At oral argument, counsel for J.S. argued that J.S. had not improved in the years he was hospi-

"Q. Do you believe that there's a reasonable expectation that if he's not treated that there exists serious risk of harm to himself or others.

"A. Yes, yes I believe so.... He claimed, "You doctors are all stupid, you killed half of the patients on this ward," and he was very loud and abusive....

"Q. You feel there's a serious risk of bodily harm to others?

"A. Yes.

"Q. Why do you feel that way?

"A. Well, he has threatened, he has already had several episodes of hitting, hitting patients or staff. I have a record that he hit Dr. [inaudible] at one time when he was his doctor."

This testimony was punctuated many times by outbursts and ramblings by J.S., which is consistent with Dr. Arevalo's testimony. Upon cross-examination, nothing of any significance was brought out which would otherwise contradict Dr. Arevalo's direct testimony. J.S. did not testify.

The burden of proof in these proceedings is with the petitioner, and there is a presumption in favor of J.S. that he does not require treatment. NDCC § 25–03.1–19; *J.A.D., supra; In Interest of Kupperion,* 331 N.W.2d 22 (N.D.1983). The above testimony presented by the petitioner—that J.S. is mentally ill, the evidence of J.S.'s violent and aggressive nature toward himself and others, and the lack of any noticeable improvement in J.S.'s condition—leads us to conclude that the findings of the lower court were supported by clear and convincing evidence. Whether we apply the scope of review as adopted by the majority of this court, *Kottke, supra,* or the view of a minority of our court, that our function is to determine whether or not the facts as found by the trial court clearly and convincingly indicate that the respondent is in need of treatment, *M.H., supra* at 557 [VandeWalle & Levine, JJ., dissenting]; *Kupperion, supra* at 29 [VandeWalle, J.,

concurring specially], the result is the same. There is ample evidence to clearly and convincingly overcome the presumption that J.S. does not require treatment. NDCC § 25–03.1–02(10).

■ An individual found by a trial court to be a "person requiring treatment," nonetheless has the right to imposition of the least restrictive conditions necessary to achieve the purposes of treatment. NDCC §§ 25–03.1–21, 25–03.1–40(2); *In Interest of Daugherty,* 332 N.W.2d 217 (N.D.1983). Section 25–03.1–21, NDCC, requires the State Hospital to prepare and submit a report assessing the availability and appropriateness of alternative treatment programs other than involuntary hospitalization. If the State Hospital believes that the alternative treatment programs contained in the report are unsuitable, it has the burden of demonstrating their unsuitability. *O'Callaghan v. L.B.,* 447 N.W.2d 326 (N.D.1989).

■ We have held that in applying section 25–03.1–21, NDCC, the trial court must make a two-fold inquiry: (1) whether or not a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether or not an alternative treatment program is sufficient to prevent harm or injuries which an individual may inflict upon himself or others. *J.A.D., supra; Kottke, supra.* The trial court must determine by clear and convincing evidence that alternative treatment is not adequate and that hospitalization is the least restrictive alternative. The majority of our court has held that this determination will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), NDRCivP. *Kottke, supra; In Interest of Palmer,* 363 N.W.2d 401 (N.D. 1985).

■ Dr. Arevalo filed a report pursuant to section 25–03.1–21, NDCC, which listed three possible treatment programs which

---

talized, that medication which J.S. refused to take could help him, but that the hospital had taken no steps to require that he take the medication and, as a result, some alternative to hospitalization should be ordered. The issue is

beyond the scope of this record, and we do not decide it. We note section 25–03.1–18.1, NDCC, describes the authority of the court to authorize involuntary treatment with prescribed medication.

could serve as alternatives to hospitalization. His direct testimony indicated that these alternatives would be inappropriate at that time due to J.S.'s aggressive nature:

"Q. Do you see any other alternative forms of treatment other than being treated within the hospital that might be viable for him at this time?

\*    \*    \*    \*    \*    \*

"A. It's been considered but its not viable, it's not advisable at this time because of his condition.

"Q. And why specifically? What are you concerned about?

"A. About his threats and his physical aggressiveness.

"Q. What kinds of treatment can he get in the hospital that would not be available outside the hospital?

"A. Well, this medication that we are trying to give him cannot be, it can be given, but he is likely to refuse it more when not in the structured setting."

On cross-examination, Dr. Arevalo similarly testified:

"Q. What, what programs that would be on the outside of the hospital have been looked into that have been ruled out at this time?

"A. There's nothing that we could, he's not [inaudible] for any program [inaudible] at this time although he's been considered [inaudible] because of his aggressive behavior, uncooperative-

ness, he's not being considered at this time."

█ This testimony indicates that alternative treatment programs would not be adequate to meet J.S.'s treatment needs. Violent, aggressive, and unpredictable behavior constitutes clear and convincing evidence that treatment outside the hospital would not be appropriate. *Palmer, supra.* J.S. did not rebut Dr. Arevalo's testimony. He did not show the trial court or this Court that available, suitable, or adequate alternative treatment facilities existed in the community which would require a treatment program other than hospitalization under section 25–03.1–21, NDCC; nor was he able to show that those alternatives listed by Dr. Arevalo would be suitable at this time. After considering the evidence presented with regard to the suitability of alternative treatment programs, we conclude the trial court's determination that no suitable alternatives existed was supported by clear and convincing evidence.

The order of the lower court is affirmed.

MESCHKE, SANDSTROM, NEUMANN and LEVINE, JJ., concur.